Office of Detention and Removal Operations

U.S. Department of Homeland Security
425 I Street, NW
Washington, DC 20536



## U.S. Immigration and Customs Enforcement

MAR 2 7 2006

MEMORANDUM FOR:    Field Office Directors

FROM:    John P. Torres
Acting Director
Office Of Detention And Removal Operations

SUBJECT:    Detention and Deportation Officer's Field Manual
Update:  Chapter 1

We have revised the Introduction to Detention and Removal Operations Policy and Procedure Manual (DROPPM); formerly the Detention and Deportation Officer's Field Manual, or DDFM). As you know, the DROPPM contains 29 chapters with 54 appendices and more than 2,100 hyperlinks, including but not limited to internal cross-references, other field manuals, regulations, relevant resources and references, contact information, and forms.  The DROPPM is available online at [                                        (b)(2)High                                        ] and on I-Link, which has replaced INSerts.

Please remember that the DROPP is the only approved source of DRO policy and procedures.  This hyperlinked manual, properly used, can save you and your officers hours of research and legwork (identifying, locating, and downloading forms; researching statutory and regulatory language, etc.)

Chapter 1, Introduction, now includes section 1.1, "Creating and Updating Policy" and section 1.2, "Policy Dissemination."  The entire chapter, as updated, is attached.

ICE.000001.09-684

## Chapter 1: Introduction

This manual[*] is the official "who, what, when, where, why" guide to the Office of Detention and Removal Operations (DRO). Use it for ready access to information critical to the work you and your colleagues perform. A virtual sourcebook, it will guide you to and through policies, procedures, and background documents.

At the click of a mouse, you can pursue any issue as deeply or broadly as you choose. Hyperlinks punctuate every chapter. Use them to review regulatory and statutory language, guidance documents, policy statements, memoranda, handbooks, manuals, legal opinions, postings by other agencies and organizations, and other material at the core of the DRO program.

The contents of Detention and Removal Operations Policy and Procedure Manual (DROPPM) represent official DRO policy. To the extent that any material conflicts with or otherwise differs from previous issuances, this manual will be the controlling document.

The electronic format means we can "publish" a manual as comprehensive as technology permits. With the help of the web, updates occur in real time. This format affords us the flexibility to respond to constructive criticism and comments, developing this living document into the reliable, definitive, user-friendly guide that field officers, analysts, managers, and senior officials will find indispensable.

Chapters vary in length. The goal is to keep them as succinct as possible. If the primary documents are complete and self-explanatory, then a chapter may consist of no more than an explanatory paragraph and a single hyperlink. When issues are complex or confusing, the text will be as extensive as necessary to clarify and add value to the source material (regulations, legislation, handbooks, etc.).

The DROPPM lodges in I-Link, the reference-library program available online and on compact disc. I-LINK organizes material as virtual "books" on a shelf. The DROPPM is cataloged under "Field Manuals." Flip from one field manual to another by means of a hyperlink, with a single click.

I-LINK reflects updates to DROPPM, incorporating new or revised policies or procedures. Procedures and policies issued through cables or memoranda that have not been incorporated into a chapter of DROPPM are no longer in effect.

The program office responsible for the subject matter is responsible for preparing DROPPM updates, in accordance with the procedures described in ███████.

Chapters of the manual itself are grouped as follows:

---

[*] referred to previously as the Detention and Deportation Officer's Field Manual

ICE.000002.09-684

Chapters one and two constitute a basic introduction, with Chapter 2 providing a contextual overview of the Detention and Removal program. Chapter 2 describes the program from its roots in the Immigration and Naturalization Service of the Department of Justice to its integration into the Department of Homeland Security in March 2003.

Subsequent chapters appear in Parts I through IV.

Part I presents the policies and procedures that govern the removal process.

Part II presents detention-related policies and procedures (standards) that apply to detention officers; detainee services, including medical care; and to the facilities housing INS detainees.

Part III provides policy and procedures relating to official property: weapons, vehicles, communications, fingerprinting, uniforms, and records.

Part IV focuses on the administration of the Detention and Removal program.

Please send suggestions for improvements, including omissions, to the "DRO Policy and Procedure Manual" mailbox. Enter "DROPPM" in the subject line of the message.

## 1.1 Creating and Updating Policy

The DROPPM contains 29 chapters with 54 appendices and more than 2,100 hyperlinks, including but not limited to internal cross-references, other field manuals, regulations, relevant resources and references, etc. The DRPM is available online at [(b)(2)High] [(b)(2)High] and on I-Link, which replaced INSerts. I-Link CDs are distributed quarterly to more than 5,000 officers and offices across the nation and abroad. Field Office Directors and Deputy Assistant Directors will communicate all changes of policy and procedure to the field in the form of a memorandum announcing a change to the DROPPM. Program offices must complete the following steps when preparing new or updated policy:

- Use the DROPPM Table of Contents to determine where your update belongs.

- Research your subject. Consult subject-matter experts and legal advisors.

- Draft new material in a straightforward, action-by-action format. Use plain English in the active voice: no jargon, no passive verbs. Write as

if you are explaining the policy to a new hire.   This means using the second person ("You do this . . . then you . . .").   Do not say, "The officer shall."

- Link to or create the form(s) necessary for the implementation of your new policy.

- If your update raises any legal issues, obtain clearance from the Office of the Principal Legal Advisor (OPLA) before forwarding to Policy Analysis and Development.

- Draft the memorandum announcing the addition or update to the DROPPM.  Provide an introductory sentence or two identifying the addition(s), deletion(s), or other revision(s) and the reason for same.  End the paragraph.  The next paragraph will consist of a bullet citing the affected Chapter, Section, and Heading (bolded), followed by the cut-and-pasted text that will appear in the manual.  For multiple updates, follow the same format:

  - [Insert Chapter, Section, Heading]:

  Cut and paste text as it will appear in the DROPPM.

- If the memorandum will exceed one page in length, you may attach the updated section(s) to the memorandum.

- Submit the draft memorandum, with attachment(s), to Policy Analysis and Development.  Policy Analysis and Development will review, format and, in consultation with you, edit the update for the field manual.

- The memorandum will become official policy only when signed by the Director, Office of Detention and Removal Operations.

## 1.2 Policy Dissemination

DRO will issue a broadcast message announcing the change/update to the DROPPM.  Each broadcast message will include a link to the DRO memorandum posted on the DRO website: [(b)(2)High].

NOTE:

Nothing in this manual may be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States, its agencies or officers, or any other person.

~~LIMITED OFFICIAL USE~~

Portions of this manual are considered sensitive and may not be released to the public. The contents of these sections are exempt from disclosure under the Freedom of Information Act. Officers using this manual and the I-LINK system must take appropriate steps to safeguard these restricted materials. Those sections of this manual which are not restricted may be accessed on the ICE Internet web site. Inquiries relating to the release of other materials should be directed to the Headquarters Freedom of Information/Privacy Act Unit, see (b)(2)High.

ICE.000005.09-684

# Detention and Removal Operations

## DRO Policy and Procedure Manual Table of Contents

This manual is the official "who, what, when, where, why" guide to the Office of Detention and Removal Operations (DRO). Use it for ready access to information critical to the work you and your colleagues perform. A virtual sourcebook, it will guide you to and through policies, procedures, and background documents.

To use the Table of Contents below, click the chapter heading for which you wish to see more information and its subsections will open in a list below. Click the subsection to view its respective page and contents.

Chapter 1: Introduction

Chapter 2: Detention and Removal Operations

Chapter 3: Homeland Security Advisory System

**I. Removal Policies and Procedures**

Chapter 11: Removal Process: Docket Control

Chapter 12: Removal Process: Immigration Bond Management

Chapter 13: Removal Process: Voluntary Departure

Chapter 14: Removal Process: Non-Hearing Removal Cases

Chapter 15: Removal Process: Final Orders

Chapter 16: Removal Process: Preparations for Travel Within 90 Days of Final Order

Chapter 17: Removal Process: Post Order Custody Reviews (POCR)

Chapter 18: Removal Process: Mariel Cubans

Chapter 19: Removal Process: National Fugitive Operations Program

Chapter 20: Removal Process: Relief from Removal

Chapter 21: Legal Proceedings

**II. Detention**

ICE.000006.09-684

Chapter 25: Detention Facilities

Chapter 26: Detainee Services

Chapter 27: Detainee Health Services

Chapter 28: Security and Control

**III. Property Management: Materials, Tools and Equipment**

Chapter 30: Detainee Property Management

Chapter 31: Firearms, Other Weapons, and Restraining Devices

Chapter 32: Government Vehicles

Chapter 33: Communications Equipment

Chapter 34: Fingerprinting

Chapter 35: Uniforms

Chapter 36: Service Records

**IV. Administration of Detention and Removal Operations**

Chapter 41: Sources of Information and Records

Chapter 42: Resource and Performance Management

Chapter 43: Overtime

Chapter 44: Significant Incident Reports

Chapter 45: INSpect

Chapter 46: Training and Assessments

Appendix List

# Chapter 1: Introduction

1.1     Creating and Updating Policy

1.2     Policy Dissemination

ICE.000007.09-684

even though the alien may have departed or been deported through a district other than the district of origin. When the FBI number is unknown, furnish date of birth, sex, and fingerprint classification if known, as quoted by the FBI on Form 1-A. Final disposition must be shown as one of the following:

Deported,

Departed voluntarily,

Status adjusted to lawful permanent resident,

Notice to Appear canceled,

Proceedings terminated by IJ (BIA),

Alienage not established,

Released as U.S. citizen (lawful resident alien), or

Alien died.

In each instance, add the date of occurrence immediately following the disposition. If the alien was deported or departed voluntarily to Mexico, add after the date, in appropriate cases:

Via airlift to Mexico, or

Departed voluntarily. Departed voluntarily" includes the case of an alien who departed from the United States before the expiration of the voluntary departure time granted in connection with an alternate order of removal.

Additional instructions regarding the FBI Form R-84 can be found in the Special Agents Field Manual, Appendix 16-1.

# Chapter 16 Removal Process: Preparations for Travel Within 90 Days of Final Order

16.1   Obtaining Travel Documents

16.2   Liaison with Foreign Consular Officials

16.3   Making Travel Arrangements

16.4   Escort Details (General)

ICE.000076.09-684

16.5    Overseas Details

16.6    Notification Process

16.7    Carrier Liaison, Liability and Notification

16.8    Prisoner Treaty Transfers

16.9    Group Removal

16.10    Justice Prisoner Alien Transportation System (JPATS) [Reserved]

16.11    Removals by Special Charter Aircraft

References

INA: 241

Regulations: 8 CFR 241 and 236.1(e)

Other: U.S. Public Heath Service Manual and Bureau of Prisons Program Statements.

16.1    Obtaining Travel Documents.

(a) General. With certain exceptions, you must secure travel documents before removing an alien from the United States. Therefore, apply for travel documents immediately after issuing the Notice to Appear to any alien:

    detained at government expense;

    whose release from a penal institution is imminent; or

    otherwise deemed high priority.

In other cases, apply for travel documents immediately after the warrant of removal has been issued.

The travel-document processing time differs from one consular office to another, so you should make it a rule to make contact early to schedule personal or telephonic interviews to determine nationality.

To obtain travel documents for aliens under a final order of removal contact the consulate having jurisdiction over your office. For individual country requirements, see the Travel Document Handbook (Appendix 16-1). To expedite the issuance of travel documents, establish a good working relationship with consulate staff. If the process of obtaining a

ICE.000077.09-684

travel document becomes extremely difficult, or reaches an impasse contact the Headquarters Office of Detention and Removal.

Follow the instructions below when requesting travel documents:

Once an order becomes final, schedule a personal interview with the alien to obtain information pertinent to Form I-217, Information for Travel Document or Passport. Form I-217 is the source document for most of the information used in travel document requests. Therefore, use all available resources to complete accurately all fields on the I-217 before submitting the request.

Within two weeks of the alien receiving his/her final order, make your travel document request. Include the charging document, final order, I-205, I-294 or I-296. Redact any reference to asylum and withholding of removal. The number of photographs varies depending on embassy/consular office; but always enclose at least four. In cases involving criminal aliens, include a copy of the conviction document for the criminal charge on the basis of which the alien was ordered removed.

To prepare a request for travel documents, consult as many sources as you need to verify the aliens identity. Talk with the alien and, if applicable, family members. Check their files. Check the Non-Immigrant Information System (NIIS) for entry information and passport number. If still in doubt, contact the International Criminal Police Organization, INTERPOL (for general information, visit the INTERPOL website at (b)(2)High to request assistance from INTERPOL, see contact information at Appendix 1-1). Send copies of identity-related search results include copies of the material previously presented to the consul, the I-217, the I-213, the immigration judge's order, fingerprints, and any other identifying documentation that will assist in establishing the nationality of the alien.

Within one week of submitting the request, follow-up with the consulate. Make sure the consular staff needs nothing more from you to process the request. That done, call for a status report at least every 30 days until the document is issued or the case is closed. In the aliens A-file, record every attempt to convince the consulate to issue the travel document. This record could be used in court.

If you have not received the travel document within 75 days of submitting the request, forward a copy of all material in the original request package to HQDROs Removal Support and Coordination Branch (see Appendix 1-1). Send the complete package, accompanied by a cover letter briefly summarizing the record to date, via express delivery service. HQDRO will send you an email confirming receipt of the packet. Failure to duplicate the request package exactly as submitted to the consulate will cause HQDRO to send the package back to you. Note: Involving HQDRO in the effort to secure travel documents does not relieve you of responsibility. Continue to press for issuance of the travel document from the consulate and any other possible source, such as family or Interpol. Include the following documents with your request:

1.    A summary of the facts, including the deportation charges;

2.    Form I-217, Information for Travel Document or Passport;

3.    Any available birth, baptismal, or foreign military record;

4.    Signed photograph;

5.    Copy of any travel document;

6.    Copy of the warrant of removal; and

7.    Copy of letter refusing issuance of travel document for removal or copies of correspondence if there is undue delay.

Advise any alien who does not, in timely fashion, apply for a travel document is subject to prosecution under 8 USC 1253(a).

An alien who is not an arriving alien and who has been ordered removed may, with certain restrictions, request removal to a country other than his/her country of origin (see Section 241(b) of the Act). For any country other than Canada, complete and forward Form I-241, Request for Acceptance of Alien, to the consulate of the country designated. Do this even if the designated country is unlikely to grant the request. At the same time, however, apply for travel documents from the consulate of the country to which the alien will likely be removed if refused by the designated country. If the country designated by the alien refuses the request or fails to respond within 30 days, disregard the designation and follow standard procedures for removal.

Do not return the passport of an alien whose departure is being enforced. The passport is the property of the issuing government and not the alien. If, however, administrative relief is pending and no final order has been entered or the final order has been entered but enforced departure is not contemplated, you may return the passport.

(b) Removals to Canada.

(1)    General. The Reciprocal Arrangement for the Exchange of Deportees between the United States and Canada prescribes procedures for submitting aliens' requests for removal to Canada (see Appendix 16-2), as follows: Prepare the I-217 and Form I-270, Request for Consent to Return Person to Canada. Form I-270 is incomplete without I-270A, Notification of Intended Removal, which covers removals and voluntary departures under safeguard to Canada, and non-citizens transiting Canada. Submit Form I-270 and I-270A in all cases, even for aliens who appear ineligible under the reciprocal arrangement. Send the forms to the Immigration and Customs Enforcement (ICE) Liaison Officer in Ottawa, who will transmit the request to the appropriate Canadian official and do everything possible to expedite a decision. Note: You must obtain consent through the ICE Liaison Office before you can effect the removal or return.

ICE.000079.09-684

You must notify the ICE Liaison Officer in Ottawa if, after Canada has granted a removal request, you do not effect the removal of the alien named in the request. You may not use the same letter of consent on a subsequent occasion involving this alien without first obtaining the ICE liaison officer's consent.

For a deportee to Canada requesting subsistence and transportation to a place other than the closest Canadian port, you must complete the reverse side of the I-270.

(2) Third country removals or returns. Advise the Headquarters' Office of Detention and Removal (DRO), on all Canadian citizens or permanent residents being removed from the United States to a third country (see Appendix 1-1). Headquarters DRO will advise the Assistant Secretary of State for Consular Affairs at the Department of State. The Assistant Secretary of State for Consular Affairs at the Department of State will notify the Canadian Director General of the Consular Affairs Bureau of the Department of Foreign Affairs and International Trade of any intended removal to a third country (see Appendix 16-5, Exchange of Letters Between the United States and Canada on the Removal of their Nationals to Third Countries).

(3) Canadian military. When the alien is a member of the Canadian Armed Forces, send a copy of the request to the Military Attach, c/o Embassy of Canada. (See Appendix 1-1 for the address.)

(4) Other assistance from liaison office in Ottawa. The ICE Liaison Officer may be able to obtain information from centralized Canadian records to help identify and obtain travel documents, e.g., for a crew member of any nationality who deserted in Canada.

(5) Safe Third Removals. The Agreement Between the Government of the United States of America and the Government of Canada for Cooperation in the Examination of Refugee Status Claims from Nationals of Third Countries (Safe Third Agreement, Safe Third, the Agreement), which has been in effect since December 29, 2004, establishes procedures for processing the claims of certain asylum seekers.

Under the Safe Third Agreement, you will return to Canada a third-country national (not from Canada or the United States) seeking entry from a Canadian land port of entry or transiting the United States while being removed from Canada. Immediately notify Canada if a transiting alien makes an asylum claim. Article 5 of the Safe Third Agreement provides that the United States will return that alien to Canada, where the Canadian refugee status determination system will decide the case.

Any alien ordered removed after having entered the United States from Canada is removable to Canada in accordance with the United States/Canada Reciprocal Arrangement for the Exchange of Deportees (see Appendix 16-2, Section III. Consent to Return Aliens). You must effect the removal as soon as possible and in no case later than one year from the date of the final order of removal. Advise Canada of the removal on Form I-270A, Notification of Intended Removal.

ICE.000080.09-684

If an arriving alien is out of status or without proper documents, the alien is subject to Expedited Removal under section 235(b) of the Immigration and Nationality Act. If the alien expresses fear of returning to his/her country of origin, refer him/her to an asylum officer for a Threshold Screening Interview.

If the alien qualifies for an exception under the Safe Third Agreement, the asylum officer will conduct a Credible Fear Interview to determine whether the alien would likely face persecution or torture if repatriated. If the alien does not qualify for an exception, remove him/her under the Expedited Removal Order. For a list of exceptions to the Safe Third Agreement, see Chapter 17.11(b) of the Inspector's Field Manual.

When the alien is an unaccompanied minor, initiate section 240 proceedings before an Immigration Judge (see Chapter 17.11(d)(6) of the Inspector's Field Manual). Likewise, initiate section 240 proceedings for Cubans at land ports of entry on the Canadian border (see Customs and Border Protection memorandum, Treatment of Cuban Asylum Seekers at Land Border Ports of Entry, Appendix 16-6).

Upon finding credible fear, the asylum officer will issue and serve the I-862, Notice to Appear. If the asylum officer finds no significant possibility of persecution or torture, i.e, credible fear, he/she will complete and issue the I-860, Notice and Order of Expedited Removal. If at that time the alien requests a review by the Immigration Judge, the asylum officer will issue and serve the I-869, Record of Negative Credible Fear Finding and Request for Review by Immigration Judge, and will issue and serve I-863, Notice of Referral to Immigration Judge. For an in-depth explanation of the credible fear process, see Credible Fear Process in the Asylum Officer's Field Manual.

Aliens who leave the United States for Canada under an order of voluntary departure and are subsequently returned to the United States are considered not to have departed the United States, per General Counsel Opinion, 89-17.

Arriving visa waivers are not subject to Expedited Removal nor can they be placed in section 240 removal proceedings. However, if visa waivers arrive from a Canadian land port of entry, claim a fear of persecution, and do not qualify for an exception under the Safe Third Agreement, return them to Canada (see Chapter 17.11(d)(8) of the Inspector's Field Manual).

(6) Notification Process. Use Form I-270A to notify the U.S. Embassy in Ottawa five business days before removing or returning any alien to Canada. At the top of the form indicate the type of removal or return by checking the appropriate box. Fill in all biographical information, including current immigration status; most serious criminal conviction; and physical or mental health issues, if any. Enter complete travel itinerary. Provide your name and contact information. Fax Form I-270A to the U.S. Embassy, Ottawa, Canada. The telephone and fax number are on the form. Document the "A" file with the completed I-270A and your fax transmittal. In addition, call Ottawa to confirm receipt of your fax. Do not remove or return the alien without first receiving approval from Ottawa.

An alien not admitted to Canada or the United States at the port of entry but directed to return for a scheduled interview regarding an asylum claim is called a "Direct Back." In the United States, we generally detain arriving aliens making a claim of asylum. Canada does not. (For more on Canada's policy, see "Canada's Refugee Protection System" at ███████████(b)(2)High███████████ The United States can remove a direct back if the alien has an outstanding order of removal. However, because Canada may want to admit the individual, you must notify the Supervisor of the Refugee Processing Unit at the Canadian Port of Entry at Fort Erie of our intent to remove a Direct Back five business days before effecting that removal. (See Appendix 1-1 for contact information.)

(c) Transfer of Deportees.

(1) General. Do not transfer an alien to a port for deportation until advised that transportation arrangements have been made including, if required, arrangements for custodial care in transit and at final destination. Prepare and send Form I-216, Record of Person and Property Transferred, with each deportee. If the deportee has a serious mental or physical problem that could affect his/her travel, attach Form I-141, Medical Certificate, together with a clinical history, to the I-216. When transferring an unescorted deportee, enclose all documents accompanying the alien in a document envelope, Form I-164.

(2) Deportation through Canada. When placing an unescorted deportee aboard a carrier that will stop in Canada en route to a third country, send advance notification to the authorities at the first Canadian port. If the first Canadian port is unknown, immediately advise the immigration liaison officer in Ottawa, who will follow through with the appropriate Canadian officials.

(d) Advance Notification of Criminal Alien Removals and All Escorted Alien Removals.

(1)    Request for Travel. Submit a travel request by completing one of the online request forms provided at the Omega website ████████(b)(2)High████████ Choose the Travel Request Form appropriate for your removal operation:

Escorted

Unescorted

Escorted After Hours

Unescorted After Hours

Escorted Juvenile

<u>HQ DRO Authorized Special Training</u>

<u>Escorted Juvenile After Hours</u>

<u>Charter Mission Commercial Travel Support</u>

The Omega site also includes travel-related forms. Retrieve them individually by clicking on the applicable link:

<u>Diplomat and Consular Travel Support</u>

<u>Airlines Expense/Visa Waivers Form</u>

<u>Cancellation Form</u>

<u>Change Form</u>

<u>Question and Comments Form</u>.

If you encounter difficulties with the direct links, follow these steps:

a.    Go to <u>www.owt.net</u>.

b.    Click on the Government Services tab at the top of the page.
c.    Under Web Pages select Detention and Removals.
d.    Select the appropriate form under Reservation Request Forms.

For quick access, bookmark Omega's home page <u>www.owt.net</u> or DRO-specific page [(b)(2)High] under Internet "Favorites."

[(b)(2)High]

[(b)(2)High]

ICE.000083.09-684



16.2 Liaison with Foreign Consular Officials.

(a) Obtaining Travel Documents. Ultimately, you must rely on foreign consular officials when a deportable alien lacks the necessary travel document to enter a foreign country. Cordial relations with consular officials are extremely important in reducing the time necessary to procure a travel document. Many foreign consulates have their own forms, which must be completed before a travel document will be issued. The Travel Document Handbook, compiled by HQDRO Removals, consists of a country-by-country listing of these requirements as well as sample fillable forms required by many foreign countries. Expired travel documents or other official identification may facilitate the foreign consuls efforts to secure a new travel document. For this reason, whenever possible, save any such documentation in the A file.

ICE.000084.09-684

(b) Reporting Problems with Consulates. <u>Section 243(d)</u> of the Act, as revised by Pub. L. 104-208, provides another option, formally notifying the Department of State, when a foreign country refuses to accept, or unduly delays acceptance, of its nationals found to be deportable from the United States. Although cooperation is always preferred to conflict and sanctions, the Secretary of State may suspend immigrant and nonimmigrant visa issuance in cases where immigration officials and foreign consular officials cannot reach agreement. If you become involved in such an impasse, report the situation to HQDRO Removals for follow-up action. Include the date and time of every attempt to obtain travel documents, the names of consular officials involved, names of aliens affected, and other relevant details.

The State Departments website provides current addresses for consular offices in the United States; see <u>http://www.state.gov/s/cpr/rls/fco/</u>.

16.3 Making Travel Arrangements.



(b)(2)High, (b)(7)e

ICE.000085.09-684

(b)(2)High,

ICE.000086.09-684



16.4    Escort Details (General).

(a) Introduction. Escort duty involves transferring or escorting aliens between immigration and other custodial facilities, to and from airports, railroad and bus depots, hospitals, courts, consular offices, aliens residences, places of employment, and so forth. A single officer or a group of officers working together may perform escort duty.



ICE.000087.09-684

(b)(2)High, (b)(7)e

ICE.000088.09-684

(b)(2)High, (b)(7)e

ICE.000089.09-684

(b)(2)High

(c) Special Handling Cases.

(1) Mental Instability. Aliens with mental disorders require special care and attention. Some have suicidal or homicidal tendencies and may attempt injury to themselves or to others. Unless the aliens file records signs of mental instability, however, you may not receive advance notice of these cases. If the alien seems unusually nervous, excitable, despondent, or otherwise irrational, inform a supervisor immediately.

Notify the receiving officer or institution before delivering an alien with known or suspected mental illness. In transit, attempt to put the alien at ease by maintaining a calm, reassuring demeanor.



(b)(2)High, (b)(7)e

16.5 Overseas Details.

(a) General. Overseas assignments tend to involve aliens with criminal records, mental illness, or physically disabilities. These require particular caution and considerable advance planning. You may expect transportation problems, difficulties with foreign officials, and other complications. To minimize problems, choose non-stop flights. If unavailable, choose the schedule with the fewest connections.

ICE.000090.09-684

(b) Consular Notification. Before traveling, provide the immigration officer in charge or the consulate of the country involved with the necessary details about the alien(s) and the escort.

(c) Travel Preparations.

(1) Vaccination and Inoculations. Certain countries require travelers to carry smallpox vaccination certificates. Countries in Asia, the South Pacific, Africa, and the Middle East may require proof of inoculation for other diseases, e.g., cholera, yellow fever, and typhoid. Check with consular representatives before traveling.

(2) Travel Authorization. A signed Form G-250, Travel Request Authorization, confirms the necessary funds are available for food, lodging, transportation and related expenses incurred during escort duty. Do not travel before obtaining this authorization. Upon returning from the authorized travel, promptly submit a travel voucher (Form SF-1012) for reimbursement. A notebook of expenses, including dates, times and reasons, can prove useful when itemizing costs.

16.6 Notification Process.

For instructions on the removal-notification process, see

(b)(2)High

16.7 Carrier Liaison, Liability, and Notification.

(a) General. When an alien is deportable at the expense of a transportation line, it should be served immediately with Form I-288. If the transportation line responds and indicates that it will furnish transportation, provide a notice on Form I-288 when the alien is completely ready for deportation. If personal care and attendance is required, supplement the notice accordingly and provide the carrier with information that the expense incident to employing a suitable person to accompany the alien to his final destination will be defrayed in the same manner as the expense of his or her deportation. Use Form I-380, Record of Expenses Billable to Transportation Company, to maintain an accurate record of all expenses incurred which are billable to the carrier.

(b) Procedures When Carrier Refuses Liability. A report is required in cases when a transportation company refuses to pay the deportation expenses of an alien brought to the United States by that company, and the costs are borne by the government. In such cases, submit the required report to the Debt Management Center (DMC) in Burlington, VT. DMC will create and forward a bill to the debtor company. If the company refuses to pay, DMC will refer the case to Regional Counsel, Burlington, who will take appropriate action to collect the debt.

The report must provide the following information:

Name of alien;

Name of vessel and country of registry;

Date, place, and manner of arrival;

Name and address of owner(s) of the vessel, and the names and addresses of any agents, charters, or other interested persons;

Date, place, and manner of removal;

The charge warranting the removal order;

Expenses incident to removal;

Details of demand for payment, including how delivered (personally served or by first-class, certified, or registered mail) and to whom (if not the vessels owner(s), cite the source of the agent's authority);

The reason for refusal of payment. Indicate whether the debtor offered to pay for any part of the expenses; and

Point of contact for technical questions (e.g., the person who determined the carriers liability).

16.8 Prisoner Treaty Transfers.

(a) General. The International Treaty Transfer Program permits the transfer of prisoners from the country where convicted to the country of origin. (For more information on the International Treaty Transfer Program, see [(b)(2)High] and [(b)(2)High]

(b) ICE involvement and responsibilities. When the U.S. Department of Justices Office of Enforcement Operations, which administers the International Treaty Transfer Program, notifies ICE of an impending transfer, HQDRO Removals staff then coordinates the removal process with the other entities involved in the transfer (prisons, Institutional Removal Program, etc.).

16.9 Group Removal.

(a) General. The escort detail for a large group of aliens includes at least two officers, of whom one is designated supervisor. A group may travel by bus, train, Justice Prisoner and Alien Transportation System (JPATS) or commercial aircraft. (See the Transportation Detention Standard (Land Transportation) in Appendix 23-1 and Enforcement Standards on Use of Restraints and Escorts in Appendix 16-4.

Before departure, make sure you have enough money for meals and other expenses, and confirm that the necessary arrangements for food and transportation have been made.

ICE.000092.09-684

Because unforeseen expenses often arise, have your government credit card with you when you travel.

Verify that the <u>Form I-216</u>, Record of Persons and Property Transferred, lists every person in the group. Confirm that all baggage is properly packed and tagged. Encourage everyone in the group to dress appropriately for the climate of the receiving country.

(b) Property and Baggage. Verify that every aliens property envelope includes the following: a copy of <u>Form I-43</u> that lists all baggage and personal effects; the warrant of removal or other documentation of removal or voluntary departure; and medical certificates as required.

(c) Commercial Travel. When traveling by bus or train, familiarize yourself with all entrances, exits, and compartments. Do not allow detainees to open windows while en route. Allow detainees to walk up and down the aisle only when necessary. When traveling on commercial aircraft, pre-board. Remain seated during stopovers.

(d) Problem Cases. At least one officer must sit beside anyone expected to try to escape. When resorting to handcuffs, do not cuff the alien to the carrier.

(e) Escapes. Exercise judgment in deciding whether to purse an escapee. Consider such factors as the number of escort officers, group size, location, the likelihood of success, and whether pursuit could jeopardize the security and accountability of the other detainees or endanger the general public.

For procedures on reporting an escape, see Reporting Assaults, Escapes and Other Incidents in <u>Chapter 44.1</u>.

16.10 Justice Prisoner Alien Transportation System (JPATS) [Reserved].

16.11 <u>Removals by Special Charter Aircraft</u>

# Chapter 17 Removal Process: Post Order Custody Reviews (POCR)

17.1     <u>Post Order Custody Regulation</u>

17.2     <u>Final Order Definition</u>

17.3     <u>Removal Period</u>

17.4     <u>Field Procedures</u>

17.5     <u>Other Factors for Consideration During Post Order Custody Review</u>