UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IRANIAN AMERICAN LEGAL DEFENSE
FUND,

        Plaintiff,

    v.

MARCO RUBIO, in his official capacity as
Secretary of State, et al.,

        Defendants.

Civil Action No. 26-2375 (ACR)

## DECLARATION OF NOAH ADAMS

I, Noah Adams, declare as follows pursuant to the authority of 28 U.S.C. § 1746:

1. I am a Deputy Assistant Director (DAD) for the Removal Management Division (RMD) North. I have served as a permanent and acting DAD since January 2024. I have been employed by U.S. Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO) since December 2011.

2. The RMD is located at ICE Headquarters in Washington, DC and provides guidance and assistance to ICE officers attempting to obtain travel documents for foreign nationals who were ordered removed. The RMD collaborates with embassies and consulates, as well as with interagency and international networks, to facilitate the efficient removal of aliens from the United States, provides nationwide post-order custody review (POCR) guidance, implements policy and procedures, and is responsible for providing case management support for aliens subject to a final order of removal.

3. As the DAD RMD North, I am responsible for the day-to-day operations regarding the removal of individuals from the United States pursuant to ICE's enforcement mission, and for ensuring that this mission is conducted safely and within the Agency's priorities and policies. I advise the ERO field offices on the coordination of removals, including

1

the nationwide management of POCR guidance, policy and procedures. I coordinate efforts between ERO and the U.S. Department of State's (DOS) domestic and international personnel to ensure that all efforts are made to gain compliance from uncooperative countries in ICE's efforts to effectuate the timely removal of those aliens with final orders of removal.

4. I provide this declaration based on my personal knowledge, belief, reasonable inquiry, and information obtained from various records, systems, databases, other DHS employees, and information portals maintained and relied upon by DHS in the regular course of business.

5. I am aware of this litigation that has been filed in the U.S. District Court for the District of Columbia.

**ICE Communications with Foreign Governments and the Interests Section of Iran**

6. All detained aliens are allowed to call their country's embassy or consulate at any point during detention.

7. To remove a foreign national from the United States who has been ordered removed, ICE generally needs a valid unexpired passport or other travel document (TD). The TD must be issued by the alien's embassy or consulate of nationality to facilitate the alien's departure from the United States. In most cases, the TD request process begins after the issuance of a final order.

8. For cases where a valid passport or TD is not available, ICE prepares and forwards a TD request to the appropriate embassy or consulate. This request contains supporting documentation required by the consulate regarding its national, including any of the individual's identity documents that are in ICE's possession.

9. ICE policy allows for consular interviews for the purpose of obtaining a TD to be conducted at local consulates, detention facilities, or field offices.

10. There is an Interests Section of the Islamic Republic of Iran, which is part of the Embassy of Pakistan, located in Washington, DC. My understanding is that the Interests Section manages Iran's diplomatic and consular representation in the United States.

2

11. ICE has in the past routinely engaged with the Interests Section to facilitate the repatriation of Iranian nationals who are subject to final orders of removal in anticipation of removal. Communications primarily focus on confirming an individual's citizenship, coordinating the issuance of a passport or travel documents when required, and travel document fees. Discussions may also include improving repatriation processes and resolving case backlogs. These discussions are routine in removal operations regardless of the country involved.

12. If an Iranian citizen has a final order of removal and does not have a valid passport, ICE will request a TD from the Interests Section. The information shared with the Interests Section is limited to information that is necessary to facilitate repatriation, which may include biographical information, immigration history, documents supporting nationality or identity, travel document applications, photographs, and fingerprints. The information shared with the Interests Section does not include information protected by 8 C.F.R. § 208.6 or 8 C.F.R. § 236.1(e).

13. ICE only provides the Interests Section the information necessary for Iran to verify the individual's identity and nationality and issue a passport or travel document. It may include identifying information, such as name, date and place of birth, available identity or civil documents, photographs, fingerprints, prior passport information, family information relevant to nationality verification, birth certificates, and other documentation supporting the individual's Iranian citizenship. Again, this information does not include information protected by 8 C.F.R. § 208.6 and 8 C.F.R. § 236.1(e).

14. DHS does not have an agreement with the Islamic Republic of Iran to provide Iran with information protected by 8 C.F.R. § 208.6 and 8 C.F.R. § 236.1(e).

**Charter Flights**

15. Once an individual's identity is confirmed, communications may also include logistical information necessary to coordinate the individual's removal to Iran, such as anticipated travel dates, arrival locations, or transportation arrangements.

16. There have been three charter flights to the Islamic Republic of Iran since September

3

2025. The first one was in September 2025, and 54 Iranian nationals were removed. The second one was in December 2025, and 41 Iranian nationals were removed. The third flight was in January 2026, and 14 Iranian nationals were removed.

17. There have been no removals to Iran since the beginning of Operation Epic Fury, which started on February 28, 2026. At present, there are no planned removals to Iran in the foreseeable future.

**Official Visits to Detention Centers**

18. An official from the Interests Section visited the Otay Mesa Detention Center to meet with Iranian citizens and assist in getting travel documents on or about November 2025. ERO officials offered the Iranian citizens currently detained at the Otay Mesa and San Luis Detention Centers an opportunity to meet in a group setting with the official. The detainees declined to meet with the Iranian official, and no presentation was given.

19. An official from the Interests Section visited the Eloy Detention Center to conduct consular visits with the detained Iranian citizens in November 2025. Some Iranian citizens voluntarily attended this meeting.

20. No official from Iran has visited the El Valle Detention Center to conduct consular visits with the detained Iranian citizens from September 2025 to present. No ERO official assigned to El Valle has forced any Iranian citizen to speak with an Iranian official.

21. ERO did not provide any information related to asylum claims, asylum applications, or credible fear interviews at any point before, during, or after these meetings.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Washington, DC

On July 29, 2026

NOAH M
ADAMS

Digitally signed by NOAH
M ADAMS
Date: 2026.07.29 16:58:34
-04'00'

Noah Adams
Deputy Assistant Director (DAD)
Removal Management Division
U.S. Immigration and Customs Enforcement
Washington, DC

5