UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IRANIAN AMERICAN LEGAL DEFENSE FUND,<br><br>Plaintiff,<br><br>v.<br><br>MARCO RUBIO, in his official capacity as Secretary of State, et al.,<br><br>Defendants. | Civil Action No. 26-2375 (ACR) |

**DEFENDANTS' MOTION FOR ORDER AND OPPOSITION**
**<u>TO PLAINTIFF'S EMERGENCY MOTION FOR EXPEDITED DISCOVERY</u>**

# TABLE OF CONTENTS

Table of Contents ..... i

Table of Authorities ..... ii

Introduction ..... 1

Background ..... 3

I. The Fund's Complaint. ..... 3

II. The Fund's Motion for Preliminary Relief and Associated Hearing. ..... 4

Argument ..... 4

I. The Court Should Deny the Motion for Failure to Comply with Local Civil Rule 7(m). ..... 4

II. The Fund is Not Entitled to Expedited Discovery. ..... 7

A. Any Discovery at this Juncture is Inappropriate Because the Court Has Not Yet Determined its Own Jurisdiction. ..... 8

B. The Fund Seeks an End-Run Around APA Review ..... 12

C. The Fund is Not Entitled to Expedited Discovery. ..... 14

III. The Court Should Lift the Obligation to Schedule a Hearing. ..... 22

IV. The Court Should Stay Defendants' Obligation to Respond to the Complaint. ..... 24

Conclusion ..... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*9878866 Canada Inc. v. Intake Breathing Tech., LLC*,
2026 WL 1133144 n.16 (D.D.C. Apr. 27, 2026) .......... 7

*A.A.R.P. v. Trump*,
137 F.4th 391 (5th Cir. 2025) .......... 23

*Afghan & Iraqi Allies Under Serious Threat Because of their Faithful Service to the United States v. Pompeo*,
Civ. A. No. 18-1388, 2019 WL 9598404 (D.D.C. Jan. 30, 2019) .......... 14

*AFL-CIO v. Dep't of Labor*,
349 F.R.D. 243 (D.D.C. 2025) .......... 19, 20

*Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd.*,
663 F.3d 476 (D.C. Cir. 2011) .......... 13

*Aland v. Dep't of Interior*,
Civ. A. No. 22-5821, 2022 WL 18027569 (N.D. Ill. Dec. 30, 2022) .......... 9

*Alexander v. FBI*,
186 F.R.D. 185 (D.D.C. 1999) .......... 5

*Anderson v. U.S. Att'ys Off.*,
Civ. A. No. 91-2262, 1992 WL 159186, at (D.D.C. Jun. 19, 1992) .......... 10

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006) .......... 24

*Attkisson v. Holder*,
113 F. Supp. 3d 156 (D.D.C. 2015) .......... 16, 19, 21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 10

*Camp v. Pitts*,
411 U.S. 138 (1973) .......... 13

*Campaign Legal Ctr. v. Iowa Values*,
710 F. Supp. 3d 35 (D.D.C. 2024) .......... 5

*Capital Eng'g & Mfg. Co. v. Weinberger*,
Civ. A. No. 87-1623, 1988 WL 13272 (D.D.C. Feb. 5, 1988) ....12

*Chavous v. D.C. Fin. Resp. & Mgmt. Assistance Auth.*,
201 F.R.D. 1 (D.D.C. 2001) ....11

*Chudasama v. Mazda Motor Corp.*,
123 F.3d 1353 (11th Cir. 1997) ....12

*Clemmons v. Dep't of Homeland Sec.*,
Civ. A. No. 06-0518 (RCL), 2007 WL 2059796 (D.D.C. July 13, 2007)....11

*Comm. of 100 on the Fed. City v. Foxx*,
140 F. Supp. 3d 54 (D.D.C. 2015) ....13

*Costal States Gas Corp. v. Dep't of Energy*,
84 F.R.D. 278 (D. Del. 1979) ....11

*Covad Commc'ns Co. v. Revonet, Inc.*,
250 F.R.D. 14 (D.D.C. 2008)....11

*Dep't of Commerce v. New York*,
588 U.S. 752 (2019) ....13

*Diamond Servs. Mgmt. Co., LLC v. C&C Jewelry Mfg., Inc.*,
Civ. A. No. 19-7675, 2021 WL 2433653 (N.D. Ill. June 15, 2021) ....9

*Disability Rts. Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*,
234 F.R.D. 4 (D.D.C. 2006) ....14, 15

*Does 1-9 v. Dep't of Just.*,
Civ. A. No. 25-0325 (JMC), 2025 WL 894120 (D.D.C. Mar. 22, 2025)....8, 15, 16, 20

*Dunlap v. Presidential Advisory Comm'n on Election Integrity*,
319 F. Supp. 3d 70 (D.D.C. 2018) ....15

*Florida Power & Light Co. v. Lorion*,
470 U.S. 729 (1985) ....14

*Franks v. Salazar*,
751 F. Supp. 2d 62 (D.D.C. 2010) ....14

*Gatore v. Dep't of Homeland Sec.*,
327 F. Supp. 3d 76 (D.D.C. 2018) ....22

*Guttenberg v. Emery*,
26 F. Supp. 3d 88 (D.D.C. 2014) ........ 15, 18, 21

*Hispanic Affairs Proj. v. Acosta*,
901 F.3d 378 (D.C. Cir. 2018) ........ 20

*Institut Pasteur v. Chiron Corp.*,
315 F. Supp. 2d 33 (D.D.C. 2004) ........ 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 10, 21, 22

*James Madison Limited by Hecht v. Ludwig*,
82 F.3d 1085 (D.C. Cir. 1996) ........ 13

*Johnson v. Panetta*,
953 F. Supp. 2d 244 (D.D.C. 2013) ........ 16

*Kaplan v. Cent. Bank of the Islamic Republic of Iran*,
896 F.3d 501 (D.C. Cir. 2018) ........ 9

*Kauffman v. Anglo-Am. Sch. of Sofia*,
Civ. A. No. 89-3419 (RCL), 1992 WL 200025, at (D.D.C. July 30, 1992) ........ 12

*Kelly v. Raimondo*,
Civ. A. No. 20-3203 (RDM), 2022 WL 14807447 (D.D.C. Oct. 26, 2022) ........ 11

*Legal Tech. Group, Inc. v. Mukerji*,
Civ. A. No. 17-0631 (RBW), 2017 WL 7279398 (D.D.C. Jun. 5, 2017) ........ 15

*Loumiet v. United States*,
225 F. Supp. 3d 79 (D.D.C. 2016) ........ 11

*Lykins v. Ass. Att'y Gen. Rose*,
608 F. Supp. 693 (D.D.C. 1984) ........ 2

*Maljack Prods., Inc. v. Motion Picture Ass'n of Am.*,
Civ. A. No. 90-1121, 1990 WL 157900 (D.D.C. Oct. 3, 1990) ........ 12

*McHugh v. Ill. Dep't of Transp.*,
55 F.4th 529 (7th Cir. 2022) ........ 9

*New Mexico v. Musk*,
770 F. Supp. 3d 192 (D.D.C. 2025) ........ passim

*New York Times Corp. v. Dep't of Def.*,
830 F. Supp. 3d 1 (D.D.C. 2026) ....................7

*Notaro v. Koch*,
95 F.R.D 403 (S.D.N.Y. 1982) ....................14

*O.A. v. Trump*,
404 F. Supp. 3d 109 (D.D.C. 2019) ....................22

*Oceana Inc. v. Ross*,
920 F.3d 855 (D.C. Cir. 2019) ....................14

*Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*,
448 F. Supp. 2d 1 (D.D.C. 2006) ....................14

*Prows v. Dep't of Just.*,
Civ. A. No. 87-1657, 1988 WL 8256 (D.D.C. Jan. 22, 1988) ....................12

*Raines v. Dep't of Just.*,
424 F. Supp. 2d 60 (D.D.C. 2006) ....................16

*Robinson v. Farley*,
264 F. Supp. 3d 154 (D.D.C. 2017) ....................16

*Rutman Wine Co. v. E.&J. Gallo Winery*,
829 F.2d 729 (9th Cir. 1987) ....................12

*Sai v. Dep't of Homeland Sec.*,
99 F. Supp. 3d 50 (D.D.C. 2015) ....................11

*Sinclair Nat'l Bank v. Off. of the Comptroller of the Currency*,
Civ. A. No. 00-2398, 2000 WL 34012862 (D.D.C. Dec. 18, 2000) ....................11

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 422 (2007) ....................9

*Small Bus. in Transp. Coal. v. Dep't of Transp.*, Civ. A.,
2021 WL 7287302 (D.D.C. Mar. 21, 2021) ....................11

*True the Vote v. IRS*, Civ. A.,
No. 13-0734 (RBW), 2014 WL 4347197 (D.D.C. Aug. 7, 2014) ....................16

*United States ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency*,
456 F. Supp. 2d 46 (D.D.C. 2006) ....................5, 7

*United States ex rel. Pogue v. Diabetes Treatment Centers of Am.*, 235 F.R.D. 521 (D.D.C. June 2, 2006) ........ 5

*United States v. Sineneng-Smith*, 590 U.S. 371 (2020) ........ 8

*United States v. United Mine Workers of Am.*, 330 U.S. 258 (1947) ........ 8

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000) ........ 9

**Statutes**

5 U.S.C. § 705 ........ 4, 24

**Rules**

**Federal R**ule of Civil Procedure 65 ........ 4

**Regulations**

8 C.F.R. § 208.6 ........ 3, 17

8 C.F.R. § 236.1(e) ........ 3, 17

## INTRODUCTION

Defendants respectfully submit this opposition to Plaintiff Iranian American Legal Defense Fund's (the "Fund") "emergency" motion[1] for expedited discovery ("Disc. Mot.," Dkt. 31).[2] With this opposition, Defendants respectfully move for the Court to lift the parties' obligation to propose a schedule for an evidentiary hearing pending the resolution of Plaintiffs' discovery motion, and to stay Defendants' obligation to respond to the Complaint (Dkt. 1).[3]

The Fund initiated this action and sought extraordinary emergency relief from a purported policy that the United States Government has conspired with the Government of the Islamic Republic of Iran to provide Iran with confidential information about alleged Iranian asylum seekers as part of removal procedures. The parties then appeared before the Court for a hearing on Plaintiff's motion for preliminary injunction, at which time it became apparent that Plaintiff's theory on standing was on incredibly shaky ground. Nevertheless, the Court decided not to deny Plaintiff's motion and instead asked the parties to propose a schedule for an evidentiary hearing in the near future so that the Court may address its jurisdiction.

---

[1] Defendants respectfully request that any hearing on the Fund's motion for expedited discovery be scheduled for after September 8, 2026. Due to prior obligations, including travel outside the District, undersigned government counsel are not available between August 27, 2026, and September 7, 2026.

[2] All pin cites are to the ECF-generated page numbers appearing in blue color in the top, right corner of each page.

[3] Pursuant to Local Civil Rule 7(m), the parties conferred, via counsel regarding both requests. Plaintiff indicates it opposes both. Plaintiff further requested that the following statement be provided to the Court: "Plaintiff opposes Defendants' request that the Court rescind its Order requiring the parties to schedule an evidentiary hearing and the parties have jointly proposed that the hearing be scheduled for September 17, 2026. If the discovery motion is granted, Plaintiff does not oppose continuing the hearing until one week after the government provides its discovery responses."

The Court deferred ruling on Plaintiff's motion for a very narrow reason. Despite an unequivocal "no" from Defendants as to whether the purported policy exists as set forth in a declaration submitted with Defendants' opposition, and the absence of competent, credible evidence to the contrary proffered by Plaintiff, the Court left open the motion to obtain a better understanding of the basis for Defendants' declaration. Plaintiff wrongly interpreted this as sanctioning "open season for discovery" in a case in which the sole claim is based on the Administrative Procedure Act ("APA"). Not so.

Plaintiff cannot use the small opening left by the Court as an opportunity to engage in a fishing expedition. Plaintiff's purported need for this discovery is telling because it confirms Defendants' arguments: the Fund failed to meet the heightened standard to show its standing. *See Lykins v. Ass. Att'y Gen. Rose*, 608 F. Supp. 693, 696 (D.D.C. 1984) (acknowledging that "litigation strategy and judgment" may have consequences to legal theories being advanced). The Court thus should reject Plaintiff's motion for expedited discovery summarily.

But even if the Court is willing to entertain Plaintiff's motion, it should nevertheless deny it for four reasons. *First*, the Fund failed to adequately confer with Defendants on the motion. *Second*, the broad discovery requests are more extensive than the Court's narrow inquiries for the anticipated evidentiary hearing. Indeed, the Fund's motion is nothing more than a naked attempt to pierce well-established principles of the Administrative Procedure Act and permit them to seek discovery. *Third*, even if the Court permitted discovery, the proposed discovery requests are not relevant to the outstanding question of standing and the existence of the alleged policy. *Fourth*, even if there is some relevance, the proposed requests are disproportional to the inquiry and should be scaled back.

## BACKGROUND

### I. The Fund's Complaint.

The Fund alleges it is "a non-partisan, nonprofit organization" which "provides pro bono immigration and asylum legal services through its legal-services team"; "[s]eeking release and protection for people of Iranian descent escaping from the country has been a priority of the IALDF, especially after the United States started mass deportation flights to Iran in late September 2025." Compl. (Dkt. 1) ¶ 6. Relying exclusively on multiple levels of hearsay, the Fund broadly alleges that beginning in or around March 2025, the United States Government and the Government of Iran entered into an agreement to facilitate the removal of Iranian nationals from the United States to Iran. *Id.* ¶¶ 22-25. To facilitate those removals, the Fund alleges that ICE officials engaged in regular monthly meetings with the Iranian Interests Section and have delivered immigration records of Iranians ordered removed. *Id.* ¶¶ 26-29. The Fund further alleges that ICE has disclosed protected information. *Id.* ¶ 30. The Fund also claims that ICE has been facilitating communications between Iranian Interests Section officials and Iranian detainees, *id.* ¶¶ 31-32, and that the Iranian officials were provided with information about "their immigration cases, including the details of their asylum applications," *id.* ¶ 35.

The Fund brings a single APA claim, alleging that "providing to the Iranian Government confidential information protected by 8 C.F.R. § 208.6 and 8 C.F.R. § 236.1(e)" is "contrary to law," "arbitrary and capricious," and "an abuse of discretion" in violation of the APA. *Id.* ¶¶ 61-63. As a remedy, the Fund asks this Court to enjoin the government from providing such confidential information, vacate the policy, appoint a special master to review ICE's files, provide notice to asylum seekers whose confidential information may have been released, enjoin the United States government from "deporting any Iranian ICE detainee," and other relief. *See id.* Prayer for Relief.

## II. The Fund's Motion for Preliminary Relief and Associated Hearing.

Approximately one week after filing its Complaint, the Fund also moved for preliminary relief under 5 U.S.C. § 705 and Federal Rule of Civil Procedure 65, asking for substantially the same relief. *See* PI Mot. (Dkt. 9); *see also* Proposed Order (Dkt 9-17). Defendants opposed the motion, *see* Defs' Opp'n (Dkt. 23), and Plaintiff filed a reply, *see* Pl's Reply (Dkt. 24).

During the hearing on the Fund's emergency motion, the Court expressed an interest in scheduling an evidentiary hearing to address a "concrete injury problem." Hr'g Tr. at 6:23-7:19, 9:2-17. And while the Court did mention the possibility of jurisdictional discovery, it did not order any discovery. *See generally id.* Defendants indeed pushed back on the notion that jurisdictional discovery was necessary at all given the other jurisdictional issues that the case presents. *See id.* at 16:23-17:5.

And the Court focused on "an evidentiary hearing" "on this preliminary posture" so that it could hear from Defendants' declarant, Mr. Adams. *Id.* 46:1-4. The Court "just want[ed] to know more about how he came to the information that he came to." *Id.* at 46:5-7. The Court also requested information about the occurrence of the March 2025 meeting, the attendees, and then asked Defendants to identify someone at the meeting. *Id.* at 46:15-46:19. The Court also requested information about third-country removals and whether there have been ongoing communications between the United States and the Iranian Interests Section since the inception of Operation Epic Fury. *See id.* at 48:3-14

# ARGUMENT

## I. The Court Should Deny the Motion for Failure to Comply with Local Civil Rule 7(m).

The Fund failed to properly confer with Defendants on its emergency motion for expedited discovery. That failure is sufficient for denying the motion.

Local Civil Rule 7(m) requires that, "before filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the areas of disagreement. [] A party shall include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed." LCvR 7(m). The purpose of the Local Rule is to promote the resolution of as many litigation disputes as possible without court intervention, or at least to force the parties to narrow the issues that must be brought to the court. *United States ex rel. Pogue v. Diabetes Treatment Centers of Am.*, 235 F.R.D. 521, 529 (D.D.C. June 2, 2006) ("The obligation to confer may not be satisfied by perfunctory action, but requires a good faith effort to resolve the non-dispositive disputes that occur in the course of litigation."). Local Civil Rule 7(m) requires that the parties "try [] in good faith to achieve its objectives," and that they take "real steps to confer," which at least contemplates that "counsel will speak to each other." *See United States ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency*, 456 F. Supp. 2d 46, 52 (D.D.C. 2006). If a party files a non-dispositive motion without certifying its compliance with Rule 7(m), the Court has discretion to deny the motion. *Alexander v. FBI*, 186 F.R.D. 185, 187 (D.D.C. 1999); *see also Campaign Legal Ctr. v. Iowa Values*, 710 F. Supp. 3d 35, 54-55 (D.D.C. 2024).

The Fund places a perfunctory conferral statement in the motion, but that is a disservice to the conferral process. The Fund contacted Defendants about the forthcoming "motion for leave to take limited written discovery before the evidentiary hearing." Ex. 1, Emails (attached hereto) at 2. Defendants' counsel responded promptly with follow-up questions to "permit effective conferral" and informed Plaintiff that the request for discovery in an APA case was "extraordinary." *Id.* To that end, Defendants' counsel requested that the Fund "provide the legal

basis" for its request. *Id.* The Fund's response was less than informative; it vaguely noted that the discovery will be tailored to the outstanding issues, and it believed that "discovery before the hearing will promote efficiency." *Id.* at 1.

The Fund's motion is not what it represented. It is labeled as an emergency motion for expedited discovery and seeks that Defendants respond no less than seven days before the evidentiary hearing. *See* Pl's Mot. at 1. Nowhere in the parties' conferral process did the Fund indicate that this would be an "emergency" motion. *See generally* Ex. 1, Emails. Nowhere did the Fund indicate that the official relief sought would be Defendants responding no less than seven days before the scheduled evidentiary hearing. *Id.* Nor did the Fund actually respond to Defendants' outstanding questions. *Id.* Put simply, the Fund treated this Court's standing order and Local Rule 7(m) as lip service and nothing more. *See* Standing Order (Dkt. 6), ¶ 7(h) (requiring "counsel to *exhaust* efforts" before raising the dispute); LCvR 7(m) (requiring counsel to "discuss the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the areas of disagreement").

More importantly, the Fund never provided to undersigned counsel its proposed discovery request to permit the parties to confer regarding their scope or purpose. Instead of accepting Defendants' invitation to discuss matters in good faith, narrow any disputes, and perhaps reach some compromises, the Fund now ambushes Defendants with irrelevant and overbroad requests. This is not what the Local Rules nor this Court's Standing Order contemplate. The two are meant to require the parties to exhaust all efforts before seeking judicial intervention. Indeed, the Fund's conduct here is nearly identical to the plaintiffs' conduct in *Does 1-9 v. Dep't of Just.*, Civ. A. No. 25-235 (JMC). The *Does* plaintiffs sought expedited discovery after filing a motion for a

preliminary injunction, and the court issued two separate minute orders denying the motion because of the plaintiffs' failure to confer. *See Does 1-9 v. Dep't of Just.*, Civ. A. No. 25-235 (JMC), Min. Order (Feb. 18, 2025); Min. Order (Feb. 28, 2025). And while the February 28 minute order also denied the expedited discovery motion because it sought "extensive, expedited discovery that [did] not appear to be tailored to the motions before the Court," it also imposed an obligation on plaintiffs to "confer in good faith with opposing counsel and attempt to narrow any points of dispute." *Does 1-9 v. Dep't of Just.*, Civ. A. No. 25-235 (JMC), Min. Order (Feb. 28, 2025). This simply evidences that the Local Rules can work as intended when a party chooses to follow them. But the Fund instead decided to ignore these directions.

Instead, the Fund offers no explanation on its perfunctory conferral attempts nor does it attempt to justify its unresponsiveness to outstanding questions that Defendants explicitly noted could lead to resolution. That is the opposite of providing "substantive basis" for the requested relief. *Contra New York Times Corp. v. Dep't of Def.*, 830 F. Supp. 3d 1, 8 n.3 (D.D.C. 2026) (rejecting the government's conferral arguments because the plaintiff "provided the substantive basis for their requested relief"); *see also 9878866 Canada Inc. v. Intake Breathing Tech., LLC*, Civ. A. No. 25-2443 (RBW), 2026 WL 1133144, at *17 n.16 (D.D.C. Apr. 27, 2026) (recounting extensive efforts on conferral as the basis for rejecting arguments). Whether the disputes would have ultimately been resolved is beside the point. Rather, conferral is about "good faith" efforts to "achieve Plaintiff's objectives"; that requires counsel to "speak to each other." *Mass. Hous. Fin. Agency*, 456 F. Supp. 2d at 52. That is absent here.

Accordingly, the Court should deny Plaintiff's motion for failure to confer.

## II. <u>The Fund is Not Entitled to Expedited Discovery.</u>

As an initial matter, it is critical to establish the type and purpose of discovery the Fund seeks because that would establish "the standard" by which this Court must evaluate the Fund's

motion. *See Does 1-9 v. Dep't of Just.*, Civ. A. No. 25-0325 (JMC), 2025 WL 894120, at *4 (D.D.C. Mar. 22, 2025) ("The Court turns first to the standard for expedited jurisdictional discovery, and then to the standard for expedited general discovery.").

The Fund here asks for "expedited" discovery, Disc. Mot. (Dkt. 31) at 1, that is, "expedited general discovery." *Does 1-9*, 2025 WL 894120, at *4. The Fund does not seek jurisdictional discovery; indeed, the words "jurisdiction" or "jurisdictional" do not appear anywhere in the Fund's motion. *See generally* Disc. Mot. (Dkt. 31). The Fund states that the purpose of the discovery it seeks is to "provide both Plaintiff and this Court with information relevant to the merits of the stay and preliminary injunction motion." *Id.* at 1. And the Fund only advances the standard applicable to expedited merits discovery, further indicating that it does not seek jurisdictional but merits discovery. *Id.* at 3. This Court is bound to decide "only questions presented by the parties." *United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020) (citation modified). Since the Fund does not seek jurisdictional discovery and only seeks expedited merits discovery, the Court must determine whether the Fund is entitled to merits discovery in this APA case and then whether it has satisfied the standard for such merits discovery on an expedited basis.

**A. Any Discovery at this Juncture is Inappropriate Because the Court Has Not Yet Determined its Own Jurisdiction.**

The Court "has jurisdiction to determine its own jurisdiction[.]" *United States v. United Mine Workers of Am.*, 330 U.S. 258, 292 n.57 (1947). That said, before the Court confirms it has jurisdiction over the subject matter of the claims presented (including Plaintiffs' request for expedited discovery), its authority is limited. The Court may "determine the facts . . . or the law" relevant to its inquiry into its subject matter jurisdiction over the merits of the dispute, *id.*, and it may also enter orders to preserve or protect the status quo to afford it time to reach a determination on its jurisdiction. *Id.* at 293. In aid of its jurisdictional inquiry, the Court may also permit

discovery to resolve factual issues necessary to its jurisdictional inquiry. *See generally Diamond Servs. Mgmt. Co., LLC v. C&C Jewelry Mfg., Inc.*, Civ. A. No. 19-7675, 2021 WL 2433653, at *4 (N.D. Ill. June 15, 2021) ("although courts are reluctant to allow even jurisdictional discovery where personal jurisdiction seems clearly absent, jurisdictional discovery is still permitted in some circumstances to allow courts to determine whether they have jurisdiction"). But the Court's authority stops there before it satisfies itself that it has jurisdiction over a matter.

Controlling authorities make clear that a court may not turn to the merits before satisfying itself of jurisdiction. *See, e.g.*, *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)."); *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 511 (D.C. Cir. 2018) ("With regard to subject-matter jurisdiction, a court must assure itself of the existence of subject-matter jurisdiction before reaching the merits regardless of whether a party raises a jurisdictional challenge."). Thus, a court lacks authority to order discovery into the merits of a dispute before determining whether jurisdiction exists. *Aland v. Dep't of Interior*, Civ. A. No. 22-5821, 2022 WL 18027569, at *4 (N.D. Ill. Dec. 30, 2022) ("proceeding to merits discovery before subject matter jurisdiction has been litigated raises concerns about overstepping this court's authority" (cleaned up)). "That is because a federal court acting without subject-matter jurisdiction violates federalism and separation-of-powers principles underlying our constitutional system." *Id.* (citation modified; quoting *McHugh v. Ill. Dep't of Transp.*, 55 F.4th 529, 533 (7th Cir. 2022) ("if there is no jurisdiction there is no authority to sit in judgment of anything else" (quoting *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 778–

79 (2000) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.")))).

The Court must decide its jurisdiction before it exercises any other authority over the Fund's request for expedited discovery. The Court's authority over suits in its jurisdiction is vast, but the Court has no authority over the merits of suits that fall outside of its jurisdiction. Ordering discovery before determining the threshold jurisdictional issues raised by the government would be inappropriate.

Also, while not raising constitutional concerns, permitting discovery where the Fund lacks standing or has failed to plead facts making a claim for relief plausible would run counter to the Supreme Court's holdings on the role of motions to dismiss in civil actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions . . . only a complaint that states a plausible claim for relief survives a motion to dismiss."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 560 (2007) ("It is no answer to say that a claim just shy of plausible entitlement can be weeded out early in the discovery process[.]").

For this reason, cases are legion in holding that discovery should wait until after resolution of a threshold dispositive motion. *Iqbal*, 556 U.S. at 678 (a complaint that fails to state a plausible claim for relief "does not unlock the doors of discovery"); *Institut Pasteur v. Chiron Corp.*, 315 F. Supp. 2d 33, 37 (D.D.C. 2004) ("[i]t is well settled that discovery is generally considered inappropriate while a motion that would be thoroughly dispositive of the claims in the Complaint is pending" (citing *Anderson v. U.S. Att'ys Off.*, Civ. A. No. 91-2262, 1992 WL 159186, at *1 (D.D.C. Jun. 19, 1992) (staying discovery during pendency of dispositive motion))); *see also Small*

*Bus. in Transp. Coal. v. Dep't of Transp.*, Civ. A. No. 20-0883 (CKK), 2021 WL 7287302, at *1 (D.D.C. Mar. 21, 2021) ("Defendant's motion [to dismiss], if granted, would be dispositive of Plaintiff's claims in this action. Accordingly, the Court finds that it would be inappropriate to allow Plaintiff the discovery it requests while Defendants' motion is pending."); *Loumiet v. United States*, 225 F. Supp. 3d 79, 82 (D.D.C. 2016) ("[C]ourts in this district have often stayed discovery while a motion that would be thoroughly dispositive of the claims in the Complaint is pending." (cleaned up)); *Sai v. Dep't of Homeland Sec.*, 99 F. Supp. 3d 50, 58 (D.D.C. 2015) ("Here, a stay of the Rule 26(f) conference and of discovery pending resolution of the threshold, dispositive motions is appropriate. Both threshold motions raise significant issues, and their resolution will likely define the scope of discovery, if any."); *Kelly v. Raimondo*, Civ. A. No. 20-3203 (RDM), 2022 WL 14807447, at *10 (D.D.C. Oct. 26, 2022) (granting stay of Rule 26(f) conference pending resolution of motion to dismiss); *Covad Commc'ns Co. v. Revonet, Inc.*, 250 F.R.D. 14, 18 (D.D.C. 2008) (noting that Court "stayed discovery pending resolution of [ ] Motion for Judgment on the Pleadings in order to save the litigants potentially unnecessary discovery expenses"); *Clemmons v. Dep't of Homeland Sec.*, Civ. A. No. 06-0518 (RCL), 2007 WL 2059796, at *1 (D.D.C. July 13, 2007) (granting stay of discovery pending resolution of dispositive motion); *Chavous v. D.C. Fin. Resp. & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 5 (D.D.C. 2001) ("A stay of discovery pending the determination of a dispositive motion 'is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources.' . . . A stay of discovery in the circumstances presented here furthers the ends of economy and efficiency, since if either the plaintiffs' dispositive motion or defendant['s] . . . dispositive motion is granted, there will be no need for discovery." (quoting *Costal States Gas Corp. v. Dep't of Energy*, 84 F.R.D. 278, 282 (D. Del. 1979))); *Sinclair Nat'l Bank v. Off. of the Comptroller of the Currency*,

Civ. A. No. 00-2398, 2000 WL 34012862, at *4 (D.D.C. Dec. 18, 2000) (staying discovery pending resolution of dispositive motion); *Kauffman v. Anglo-Am. Sch. of Sofia*, Civ. A. No. 89-3419 (RCL), 1992 WL 200025, at *7 (D.D.C. July 30, 1992) (denying motion to reconsider stay of discovery pending resolution of dispositive motion); *Maljack Prods., Inc. v. Motion Picture Ass'n of Am.*, Civ. A. No. 90-1121, 1990 WL 157900, at *1 (D.D.C. Oct. 3, 1990) (same); *Capital Eng'g & Mfg. Co. v. Weinberger*, Civ. A. No. 87-1623, 1988 WL 13272, at *1 (D.D.C. Feb. 5, 1988) ("courts have not hesitated to stay discovery as to the merits of an action pending initial consideration of preliminary, and potentially dispositive, motions"); *Prows v. Dep't of Just.*, Civ. A. No. 87-1657, 1988 WL 8256, at *7 (D.D.C. Jan. 22, 1988) (noting discovery stayed pending resolution of dispositive motion); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) ("Facial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should, however, be resolved before discovery begins. Such a dispute always presents a purely legal question; there are no issues of fact because the allegations contained in the pleading are presumed to be true."); *Rutman Wine Co. v. E.&J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (the idea that discovery should be permitted before deciding a motion to dismiss "is unsupported and defies common sense").

Here, Defendants' threshold defenses do not turn on disputed issues of fact that would necessitate it providing the Court or Plaintiffs with additional information. As already explained, even accepting as true the allegations in the Fund's pleadings to the extent non-conclusory as required by *Iqbal* and *Twombly,* the Fund fails to establish its standing or to state a claim upon which relief may be granted.

**B. The Fund Seeks an End-Run Around APA Review.**

The Fund proposes discovery requests that exceed the scope of the outstanding inquiry as set by the Court. *See* Pl.'s Prop. Interrogatories (Dkt. 31-1); Pl.'s Prop. Prod. Req. (Dkt. 31-2).

That is nothing more than a request to proceed to discovery in an APA case, in which discovery is highly disfavored. The Court should see the Fund's attempt for what it is and deny the request.

Discovery is generally not available in cases based on the APA.[4] *Comm. of 100 on the Fed. City v. Foxx*, 140 F. Supp. 3d 54, 59 (D.D.C. 2015) (*citing Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd.*, 663 F.3d 476, 487 (D.C. Cir. 2011)). A "strong showing of bad faith or improper behavior" is an exception to the general rule against the inquiry into the "mental processes of administrative decisionmakers." *Dep't of Commerce v. New York*, 588 U.S. 752, 781 (2019). There is a very "narrow exception to the general rule against inquiring into 'the mental processes of administrative decisionmakers." *Id.* at 781; *see also Foxx*, 140 F. Supp. 3d at 59.

Entitlement to extra record discovery requires that the Fund makes a "strong showing" of bad faith. *James Madison Limited by Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996). While the Fund may allege that Defendants acted in bad faith (though it does not appear it does so), conclusory assertions are insufficient. *Id.* (consultant's assertions that "it appeared" from the agency's conduct that the agency had a "predetermined agenda" amount to "conclusory statements" that "fall far short of the 'strong showing' of bad faith required to justify supplementing the record").

The Fund's allegations here fail to satisfy the "'strong' evidence" required in this Circuit of 'unalterably closed minds' necessary to justify discovery into the . . . decision making process." *Air Transp. Ass'n of Am.*, 663 F.3d at 488 (finding that a letter by a dissenting member stating that the Board's behavior gave "'the impression' of prejudgment" fell short of the strong evidence

---

[4] As established during briefing on Plaintiff's motion for preliminary injunction, the "policy" about which Plaintiff speculates does not exist. That, however, does not detract from the above principles regarding APA review as it relates to Plaintiff's motion for expedited discovery. It is well settled that review under the APA is limited to the administrative record "not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam).

required). D.C. Circuit law presumes the record has been properly designated and only will go beyond the record in "exceptional cases." *See, e.g.*, *Oceana Inc. v. Ross,* 920 F.3d 855, 865 (D.C. Cir. 2019) ("the designation of the Administrative Record . . . is entitled to a presumption of administrative regularity"); *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs,* 448 F. Supp. 2d 1, 5 (D.D.C. 2006) (the "agency is entitled to a strong presumption of regularity, that it properly designated the administrative record."); *Franks v. Salazar*, 751 F. Supp. 2d 62, 66 (D.D.C. 2010) ("When reviewing an agency decision, a court will go beyond the agency's record only in exceptional cases.") (citing *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985)).

**C. The Fund is Not Entitled to Expedited Discovery.**

Even if the Fund could overcome the insurmountable jurisdictional impediment and the challenge to the legal sufficiency of its claims, its request for expedited discovery should still be denied because the applicable standard for such discovery has not been met. In support of its request for expedited discovery, the Fund chiefly relies on *New Mexico v. Musk*, 770 F. Supp. 3d 192 (D.D.C. 2025).[5] But the case does not carry the weight the Fund places on it.

"To determine whether expedited discovery is appropriate, courts have developed two commonly recognized approaches: (1) the *Notaro* [*v. Koch*, 95 F.R.D 403 (S.D.N.Y. 1982),] test and (2) the reasonableness, or good cause, test." *Disability Rts. Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D.D.C. 2006). Courts in this District have favored the

5 The Fund also cites to *Afghan & Iraqi Allies Under Serious Threat Because of their Faithful Service to the United States v. Pompeo*, Civ. A. No. 18-1388, 2019 WL 9598404 (D.D.C. Jan. 30, 2019). But that case's limited analysis offers little guidance on how this Court may evaluate the expedited discovery requests at issue here.

reasonableness test. *Legal Tech. Group, Inc. v. Mukerji*, Civ. A. No. 17-0631 (RBW), 2017 WL 7279398, at *2 (D.D.C. Jun. 5, 2017). The Fund agrees. Disc. Mot. (Dkt. 31) at 3.

"Under the reasonableness test, courts consider the reasonableness of the request in light of the entire record to date and all of the surrounding circumstances." *Disability Rights Council*, 234 F.R.D. at 6; *see also Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 103-04 (D.D.C. 2018) (collecting cases). Common factors include: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Disability Rts. Council*, 234 F.R.D. at 6; *see also Does 1-9*, 2025 WL 894120 at *8. On balance, the factors decisively counsel against the discovery the Fund seeks.

First, while the Fund seeks a preliminary injunction, it has not done so "promptly." *New Mexico*, 770 F. Supp. 3d at 198; *see also Guttenberg v. Emery*, 26 F. Supp. 3d 88, 98-99 (D.D.C. 2014) ("Plaintiffs' demonstrated lack of urgency in seeking expedited discovery also weighs against granting their request."). Indeed, the Fund readily admits that its individual declarants "all interacted with an official of the Islamic Republic of Iran on or about November 2025." Counsel's Email to Chambers (Dkt. 30-1) at 1. Likewise, the Fund does not dispute that the declarants failed to raise their claims of unauthorized disclosure before the immigration courts. Hr'g Tr. at 43-44. Indeed, the Fund did not answer the Court's question, "I think his point is a little bit different. I think his point is, have you filed -- in the two declarations, have you filed to reopen those asylum claims?" *Id*. at 44. Even crediting the Fund's representation that it "only knew there was a policy as of March" 2026, *id*. the Fund still has not explained why it waited until July to file its case and move for preliminary relief. In short, the Fund did not "promptly" seek a preliminary injunction

and the first element weighs against granting its request for expedited discovery. *See also* PI Opp'n (Dkt. 23) at 48-49 (discussing the Fund's delay in suing and seeking a preliminary injunction shows lack of irreparable harm).

The second and third factors assess the breadth and purpose of the requested discovery. *See* New Mexico, 770 F. Supp. 3d at 199 ("The second and third factors are closely related."); *Does 1-9*, 2025 WL 894120 at *8. The Fund's "proposed discovery requests are not narrowly tailored to discovering [information relevant to their preliminary injunction motion] and instead seek significant discovery on the merits." *Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015). A request for expedited discovery is inappropriate if it "seeks to prove an element of the plaintiffs case[.]" *Id.* (citation modified).

The Fund argues, without explanation, that its requests are "quite narrow" and seeks "information about the key issue that this Court identified during the August 5, 2026, hearing: determining the existence and scope of the challenged policy." Disc. Mot. (Dkt. 31) at 4. "This Court need not . . . address undeveloped arguments[.]" *Robinson v. Farley*, 264 F. Supp. 3d 154, 162 (D.D.C. 2017). "It is plaintiff's task to spell out his arguments squarely and distinctly." *Raines v. Dep't of Just.*, 424 F. Supp. 2d 60, 66 n.3 (D.D.C. 2006) (citation modified). "[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived." *Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013).

And even a cursory review of the Fund's requests shows the requests are "actually quite broad" and irrelevant. *True the Vote v. IRS*, Civ. A. No. 13-0734 (RBW), 2014 WL 4347197, at *7 (D.D.C. Aug. 7, 2014). The discovery requests consist of seven interrogatories and ten requests for production. *See* Pl.'s Prop. Interrogatories (Dkt. 31-1) at 7-8; Pl.'s Prop. Prod. Req. (Dkt. 31-2) at 8-9. All interrogatories seek the identity of individuals or Defendants who may have

participated in communications with the Iranian Interests Section. Pl.'s Prop. Interrogatories (Dkt. 31-1) at 7-8. The only conceivable purpose of such interrogatories is to seek the identity of witnesses with the goal of scheduling depositions or seeking further discovery. But the Fund has disclaimed a desire to depose witnesses for purposes of its preliminary injunction motion. Disc. Mot. (Dkt. 31) at 4 ("Plaintiff does not seek leave to take depositions prior to the hearing"); *id*. at 5 ("Plaintiff does not seek depositions at this preliminary-relief stage"). And this Court has identified the persons it wishes to hear from at the evidentiary hearing: (1) Mr. Adams, Hr'g Tr. at 49:10-11 ("I would like to hear from Mr. Adams at that hearing live."); and (2) a witness to the alleged March 2025 meeting between DHS, State, and the Iranian Interests Section, *id*. at 46:15-19 ("Then I'd like to hear from someone who was at that meeting."). Even as to those witnesses, the Court's inquiry is quite limited. As to Mr. Adams, the Court expressed its desire "to know more about how he came to the information" included in his declaration. *Id*. at 46:5-6. As to the alleged meeting, the Court expressed its desire to know whether "it occurred." *Id*. at 46:18-19. The identities of the other individuals the Fund seeks to discover have no bearing on the basis for Mr. Adams's declaration or whether the alleged March 2025 meeting occurred, or on what was discussed at that meeting. In short, none of the interrogatories is relevant to resolving the Fund's emergency relief request and is contrary to the Court's narrow jurisdictional inquiry. *New Mexico*, 770 F. Supp. 3d at 199 ("Plaintiffs may not abuse the discovery process by seeking irrelevant information (citation modified)).

The Fund's proposed document requests are even more attenuated. The Fund seeks all communications with the Iranian Interests Section related to removals of Iranians (Document Requests 1, 2, 4, 6, 9). But the Fund has disclaimed "challeng[ing] the policy of exchanging routine travel document information that is not protected by 8 C.F.R. § 208.6 or § 236.1(e)" and

only "challenges a new policy that began with an agreement between the governments of the United States and Iran reached during a meeting at the State Department in March 2025, pursuant to which the U.S. government has provided information protected by §§ 208.6 and 236.1(e) on a monthly basis." PI Reply (Dkt. 24) 7-8. As such, the generic communications between the United States Government and the Iranian Interests Section that the Fund seeks are irrelevant to the issue before the Court at this stage: Whether the an alleged agreement between the United States and Iran exists. Neither are documents or communications related to meetings between the two sovereigns (Document Requests 3) or ICE plans to remove Iranian nationals, including whether those removals are to third countries (Document Request 5) because, again, the Fund challenges an alleged agreement to share confidential information, not the general day-to-day communications between the two countries. Further, Document Request 7 is irrelevant if the Court denies the Fund's request to serve interrogatories, as it should (see above). Again, at this stage, the Fund may not seek discovery into matters that may be relevant to the case as a whole but "are not narrowly tailored to reveal information related to the preliminary injunction[.]" *Guttenberg*, 26 F. Supp. 3d at 98.

That leaves Document Request 10. At first glance, it appears relevant because it seeks information regarding ICE policies related to communications with the Iranian Interests Section or redactions of confidential information. But the Government has already produced the relevant portions of ICE's Field Manual (Dkt. 23-1), and described the process of redacting information, Adams Decl. (Dkt. 23-2) ¶¶ 6-14. It is unclear what additional information the Fund seeks to obtain. The Fund does not explain in its motion, and its failure to meaningfully meet and confer with Defendants about the scope of that request, leaves the Government and the Court guessing.

For all these reasons, the second and third factors weigh heavily against granting the Fund's request for expedited discovery.

Contrast those expansive requests with some of the expedited discovery requests judges in this district have permitted. In *AFL-CIO*, Judge Bates permitted narrow discovery "tailored to determining the contours of the agencies' actions that are necessary for deciding a preliminary injunction motion, primarily irreparable harm." *AFL-CIO v. Dep't of Labor*, 349 F.R.D. 243, 251 (D.D.C. 2025). The document requests in that case, for example, were "limited to documents referenced by three of defendants' declarants in statements made less than two weeks ago." *Id.* at 252. Here, in contrast, the Fund seeks all documents and communications between the United States and the Iranian Interests Section from March 2025 related to removals of Iranian nationals. Pl.'s Prop. Prod. Req. (Dkt. 31-2) at 8-9.

Even in *New Mexico*—the Fund's lead case—Judge Chutkan permitted discovery of relevant information "limited to specific time period . . . of less than two months" and that disclaimed seeking various forms of electronic communications. *New Mexico*, 770 F. Supp. 3d at 200. Indeed, she adopted "a narrowing principle[]" of requiring the production of records related to harm being caused on the specific plaintiffs in that case and determined that "[i]nformation reflecting harm to other parties is not relevant." *Id.* at 200. As discussed above, the Fund's expansive discovery requests cannot be squared with that narrowing principle.

The fourth factor assesses the burden to respond to the expedited discovery requests; here, that burden would be "heavy" but only a "low" burden "supports granting the motion for expedited discovery." *Attkisson*, 113 F. Supp. 3d at 165. Even assuming the information the Fund seeks exists, responding to the Fund's discovery requests would involve at least two Executive departments: the Department of State (Interrogatory Nos. 1-3, 7 and Document Requests Nos. 1-

4, 7, 9) and the Department of Homeland Security (Interrogatory Nos. 1-7 and Document Request Nos.. 1-10). And while courts have granted requests for expedited discovery, those cases have generally involved constitutional or statutory challenges to government action, not APA claims. *See*, *e.g.*, *New Mexico*, 770 F. Supp. 3d at 196 (alleged violation of the Appointments Clause); *Does 1-9*, 2025 WL 894120 (alleged violations of the Privacy Act and the Fifth Amendment). Moreover, the Fund has not asserted a policy and practice claim that would require the Court to ascertain "[t]he contours of the precise policy at issue." *AFL-CIO*, 349 F.R.D. at 249 (citation modified) (citing *Hispanic Affairs Proj. v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018)).

In addition, each response to the Fund's discovery requests necessarily will need to be evaluated for applicable privileges, which heightens the burden on the Government to respond to these requests expeditiously. Indeed, the discovery requests demand the production of a privilege log in any instance a privilege is asserted. *See* Pl.'s Prop. Interrogatories (Dkt. 31-1) at 6; Pl.'s Prop. Prod. Req. (Dkt. 31-2) at 7. Also, the Fund seeks disclosure of protected records (*e.g.*, Document Requests 4, 5). Other privileges that could be implicated include the attorney-client privilege, the attorney work product doctrine, the deliberative process privilege, or the state secrets privilege. Thus, it is not clear whether the Fund will be able to obtain the information it seeks in any expedited timeline even if permitted to serve its requests and the information it seeks actually exists. What is certain, however, is that responding to these expansive discovery requests would place a "heavy" burden on Defendants' officials, which the Supreme Court has cautioned against, especially where, as here, this case cannot survive on jurisdictional grounds:

> If a Government official is to devote time to his or her duties, and to the formulation of sound and responsible policies, it is counterproductive to require the substantial diversion that is attendant to participating in litigation and making informed decisions as to how it should proceed. Litigation, though necessary to ensure that officials comply with the law, exacts heavy costs in terms of efficiency and

> expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government.

*Iqbal*, 556 U.S. at 685.

Importantly, the timing of the discovery requests counsels against granting the Fund's motion. "Because discovery typically occurs after the resolution of motions to dismiss, presenting a motion for expedited discovery prior to rulings on motions to dismiss is often disfavored." *Attkisson*, 113 F. Supp. 3d at 165 (citation modified). "[R]equiring defendants to comply with an order for expedited discovery when the case may later be dismissed for failure to state a claim could "force the defendants to expend significant resources responding to discovery requests in a case where plaintiffs did not have a viable cause of action." *Id.* (cleaned up). Here, the Fund's requested discovery comes before the Defendants have even had an opportunity to respond to the Complaint. At a minimum, this Court should afford Defendants the opportunity to respond to the Complaint and "reasonableness dictates that the Court consider [any] motion to dismiss before requiring extensive and expensive discovery.'" *Id.* at 165-66 (quoting *Guttenberg*, 26 F. Supp. 3d at 99).

Furthermore, the Fund's delay in seeking discovery counsels against granting their last-minute request here. The Fund had plenty of opportunities to seek leave for expedited discovery in this case, but it simply failed to do so. During the hearing on the Fund's emergency motion, this Court discussed discovery with the Fund's counsel. Hr'g Tr. at 9:12-10:1. Further, the Fund did not ask for discovery after the government counsel's argument that "the Court doesn't even need to go into jurisdictional discovery[.]" *Id.* at 17. In other words, the Fund did not press the possibility or explain the need for expedited discovery even after the Court clearly indicated it would schedule an evidentiary hearing, the timing for such hearing, or the topics to be discussed. In fact, the Fund waited another nine days after the hearing before contacting Defendants' counsel

to advise of the Fund's anticipated discovery requests. Even then, its outreach constituted nothing more than a notice of an intent to seek discovery, without any explanation as to the scope of the discovery, its timing, or purpose, and without any intent to meaningfully confer.

Ultimately, the rules do not permit the "unlock[ing] [of] the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. This Court already stated that the Fund's allegations and evidence are insufficient for this Court to grant the expedited relief the Fund seeks. Hr'g Tr. at 39 ("THE COURT: I think you have less detail than you think."); *id.* at 42 ("THE COURT: I'm not anywhere near to issuing a 705 stay."); *id.* ("So I need a lot more information before I issue a stay. I can't stay something I don't know exists."). Defendants have unequivocally denied the existence of the policy the Fund alleges; but nothing in the APA requires the government to confirm or deny the existence of a challenged policy. It is the Fund's obligation to establish the existence of the alleged policy. *See Gatore v. Dep't of Homeland Sec.*, 327 F. Supp. 3d 76, 91 (D.D.C. 2018). At a minimum, the Fund's obligation is to establish its standing with specific affidavits or other evidence, *see O.A. v. Trump*, 404 F. Supp. 3d 109, 143 (D.D.C. 2019) (describing detailed declarations submitted by plaintiff organizations and finding those sufficient to establish "perceptible impairment" of the organizations' missions (citation modified)), which this Court has already serious questioned, *see* Hr'g Tr. at 16 ("THE COURT: Okay. But in order to understand that -- right? -- then I would need to know more about the organization and sort of what baseline we're working with and against."); *id.* at 39 ("I think you have less detail than you think."). The conclusory allegations that form the basis of the Fund's standing and its claim are insufficient to establish its entitlement to expedited discovery.

## III. <u>The Court Should Lift the Obligation to Schedule a Hearing.</u>

The Fund's motion practice has thrown into doubt whether the Court's contemplated evidentiary hearing can happen on the proposed timeline. That doubt will become a certainty

should the Court grant, even in part, the Fund's motion for expedited merits discovery. Regardless of the path that the Court chooses, Defendants should not be obligated to confer and schedule a hearing for September while these outstanding questions remain unresolved. The Court should instead permit the parties to confer on how they intend to proceed within two weeks of a ruling on the Fund's discovery motion.

Neither the Court nor the U.S. Attorney's Office is a "Denny's" that requires either to be available at the drop of a hat for the Fund and its litigation decisions. *See A.A.R.P. v. Trump*, 137 F.4th 391, 394 (5th Cir. 2025) (Ho, J., concurring) ("We seem to have forgotten that this is a district court—not a Denny's. This is the first time I've ever heard anyone suggest that district judges have a duty to check their dockets at all hours of the night, just in case a party decides to file a motion."). The principle can and should apply to Defendants, as well. Defendants' counsel have other litigation and personal obligations that have been scheduled, and the Fund cannot use its litigation tactics to jump to the head of a line of outstanding obligations. That is not how litigation works nor should it. *See id.* (indicating the absurdity of 24-hour availability and advising against "special treatment"). Of course, Defendants are not suggesting that they would fail to abide with the Court's order; rather, Defendants are respectfully requesting that Court consider, as it previously has, the laundry list of obligations that the agencies and counsel are juggling. *See, e.g.*, Dec. 18, 2025, Hr'g Tr. at 54, *Miot v. Trump*, Civ. A. No. 25-2471 (ACR) (recognizing that the Department of Homeland Security and its personnel "are incredibly busy and have been for months" and that responding to the Court's questions and requests "take[s] a lot of time").

Accordingly, given the Fund's litigation decisions, proceeding with an evidentiary hearing on the expedited timeline that the Court contemplated is no longer feasible. The Court should vacate its order that requires the parties to schedule one.

## IV. <u>The Court Should Stay Defendants' Obligation to Respond to the Complaint.</u>

Defendants respectfully request that the Court stay their obligation to respond to the Complaint until after the Court resolves the pending motion for emergency relief. Pursuant to Local Civil Rule 7(m), the parties conferred, via counsel, about this request and Plaintiff indicates it opposes the requested relief. *See supra* n.3.

The current deadline is September 8, 2026. The Parties are already engaged in substantial efforts to litigate Plaintiffs' motion for emergency relief and motion to take expedited discovery. Meanwhile, the Court has indicated it wishes to take further evidence by way of an evidentiary hearing. The existing obligations have placed substantial burdens on Defendants and their counsel to respond under condensed timelines while also managing substantial dockets in other matters. A response to the Complaint on September 8, 2026, does not meaningfully contribute to advance those efforts. Moreover, Defendants have already raised threshold jurisdictional arguments with the Court in their opposition to a preliminary injunction and relief under 5 U.S.C. § 705. *See* Defs' Opp'n. The entire purpose of the evidentiary hearing is to determine whether the Court has jurisdiction. *See* Hr'g Tr. at 6:23-7:19, 9:2-17. If the Court indeed determines that it lacks jurisdiction, then it must dismiss the action anyway, which would obviate the need for any responsive pleading and preserve judicial and party resources. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

Therefore, the Court should stay Defendants' obligation to respond to the Complaint.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court deny the Fund's request for preliminary relief, vacate the order requiring the parties to propose a schedule for an evidentiary hearing, and stay Defendants' obligation to respond to the Complaint pending further order of the Court.

Dated: August 25, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: *\/s/ Dimitar P. Georgiev*
DIMITAR P. GEORGIEV, D.C. Bar # 1735756
DHRUMAN Y. SAMPAT
Assistant United States Attorneys
601 D Street, NW
Washington, DC 20530
(202) 252-2500 (main)

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IRANIAN AMERICAN LEGAL DEFENSE FUND,<br><br>Plaintiff,<br><br>v.<br><br>MARCO RUBIO, in his official capacity as Secretary of State, et al.,<br><br>Defendants. | Civil Action No. 26-2375 (ACR) |

**[PROPOSED] ORDER**

UPON CONSIDERATION of Plaintiff's motion for provisional relief, Defendants' opposition, and the entire record herein, it is hereby

ORDERED that Plaintiff's motion for expedited discovery is DENIED, and it is further

ORDERED that Defendants' motion for order is GRANTED, and it is further

ORDERED that Defendants' obligation to respond to the Complaint is hereby STAYED pending further order of the Court, and it is further

ORDERED that the parties are relieved of the obligation to schedule an evidentiary hearing until further order of the Court, and it is further

ORDERED that the parties shall file a joint status report advising the Court on further proceedings within two weeks of the Court's order resolving Plaintiff's motion for expedited discovery.

SO ORDERED:

__________________
Date

________________________________________
ANA C. REYES
United States District Judge