**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IRANIAN AMERICAN LEGAL DEFENSE FUND,<br><br>*Plaintiff*,<br><br>v.<br><br>MARCO RUBIO, in his official capacity as Secretary of State, et al.,<br><br>*Defendants*. | Civil Action No. 26-2375-ACR |

**PLAINTIFF'S REPLY IN SUPPORT OF EMERGENCY MOTION FOR EXPEDITED DISCOVERY**

Plaintiff brought this case to challenge Defendants' policy of sharing confidential asylum information with the Iranian government in violation of 8 C.F.R. §§ 208.6 and 236.1(e). Information about the challenged policy is exclusively in the hands of Defendants, who deny that the challenged policy exists. To facilitate resolution of the factual dispute, Plaintiff seeks leave to serve seven interrogatories and ten requests for production. Defendants argue that the Court cannot allow expedited discovery for purposes of deciding the pending motion for preliminary relief and should deny merits discovery because this case was brought under the Administrative Procedure Act (APA). For the reasons explained below, Plaintiff's motion for discovery should be granted.

**ARGUMENT**

**I. The Court has authority to allow discovery.**

**A. The Court can allow discovery regarding the existence of the challenged policy for purposes of deciding the pending motion for preliminary relief.**

Defendants argue that any discovery related to the motion for preliminary relief is forbidden because the Court has not yet determined its own jurisdiction. *See* Defs.' Opp., ECF No. 33, at 8–12. In Defendants' view, Plaintiffs' discovery requests relate only to merits issues,

but the current dispute is entirely about jurisdiction. *Id.* at 7–8. Much of Plaintiff's requested discovery, however, relates to the jurisdictional issue of standing—that is, to showing the existence of the challenged policy that has caused Plaintiff concrete injury. *See, e.g.*, Proposed RFPs, ECF No. 31-2, at 8 (requesting documents related to (1) the March 2025 meeting at the State Department involving officials from the Iranian Interest Section; (2) communications between Defendants and the Iranian Interest Section about the removal of Iranian nationals; (3) communications related to meetings between Defendants and the Iranian Interest Section; and (4) documents shared with Iran regarding Iranian asylum seekers); *see also, e.g.*, Proposed Interrogatories, ECF No. 31-1, at 7 (asking to identify individuals who (1) participated in the March 2025 State Department meeting with the Iranian Interest Section; (2) participated in conversations with the Iranian Interest Section; and (3) transmitted information about Iranian asylum seekers to the Iranian Interest Section). And, as this Court has previously recognized, "whether or not there are any current communications between DHS and State and the Interests Section" is relevant to standing. Hrg. Tr., ECF No. 29, at 9:22–23; *see id.* at 9:12–24; *id.* at 10:16–11:3.

Moreover, whether the challenged policy exists relates both to standing (whether agency action injured Plaintiff) and to the merits (whether the agency acted unlawfully). When "jurisdictional facts … are inextricably intertwined with the merits of the case, [a court] should typically defer its jurisdictional decision until the merits are heard." *Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F. Supp. 2d 1, 29 n.18 (D.D.C. 2009) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 198 (D.C. Cir. 1992)). Because standing and the merits rely on similar facts, it is appropriate—and in the interest of judicial economy—for the Court to permit discovery of the relevant facts to facilitate the Court's determination of whether Plaintiff has met its preliminary burden of demonstrating that the challenged policy likely exists.

### B. Discovery is available in APA cases challenging undisclosed policies.

Defendants argue that Plaintiff's motion for discovery should be denied because this is an APA case and, typically, courts decide APA cases on the administrative record, without discovery. *See AFL-CIO v. DOL*, 349 F.R.D. 243, 248 (D.D.C. 2025) (citing *Am. Bioscience, Inc. v. Thompson*, 243 F.3d 579, 582 (D.C. Cir. 2001)). "Defendants' argument glosses over the fact that … this is not an ordinary APA case" challenging "a promulgated regulation or a grant or denial of an application," but rather a case challenging a "new polic[y] of permitting unlawful disclosures of protected information." *Id.* In such circumstances, discovery may be appropriate where, as here, "the record does not reveal whether [the] agency's challenged policy exists." *Escobar Molina v. DHS*, 832 F. Supp. 3d 22, 52 (D.D.C. 2026) (quoting *Univ. of Cal. Student Ass'n v. McMahon*, No. 25-cv-354, 2025 WL 1906548, at *2 (D.D.C. Mar. 18, 2025)); *see AFL-CIO*, 349 F.R.D. at 248 ("[A] court may depart from the default APA no-discovery rule" where "a key question" is "whether the alleged … policy in fact exists." (quoting *Venetian Casino Resort, LLC v. EEOC*, 409 F.3d 359, 360 (D.C. Cir. 2005))); *see also Hispanic Affs. Proj. v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018) (discovery in an APA case may be appropriate to "ascertain the contours of the precise policy at issue").

Here, then, discovery is apt because the existence of the policy is in dispute. The discovery sought by Plaintiff will "'fill[] in gaps … to determine what the agency actually did,'" *AFL-CIO*, 349 F.R.D. at 249 (quoting *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1227 (D.C. Cir. 1993)), with respect to sharing confidential asylum information with Iran.

## II. Plaintiff's discovery request is reasonable for the preliminary-relief stage of the case.

Plaintiff's motion seeks leave to take limited discovery to gather evidence—which is exclusively in the hands of Defendants—to show that the challenged policy exists. Plaintiff has

already explained why its requests are reasonable. *See* Mot. for Discovery, ECF No. 31, at 3–5. Defendants' arguments to the contrary do not alter the analysis.

**A.** The first consideration favoring discovery is the pending motion for a stay or preliminary injunction. *See id.* at 3–4. In response, Defendants argue that Plaintiff did not *promptly* file its preliminary injunction motion. Defs.' Opp., ECF No. 33, at 15–16.

To the contrary, Plaintiff promptly sought injunctive relief: Plaintiff became aware that there was a policy of sharing protected asylum information at the end of March 2026, immediately sought more information, filed this suit at the beginning of July, and moved for injunctive relief one week later. *See* Mehri Decl., ECF No. 9-6, ¶¶ 17–33; Compl., ECF No. 1; Mot. for Stay and Prelim. Inj., ECF No. 9. And Plaintiff moved for discovery just nine days after the preliminary-injunction hearing and before Defendants had provided their availability for an evidentiary hearing. *See* Mot. for Discovery, ECF No. 31.

The cases on which Defendants rely do not call into question the timeliness of Plaintiff's discovery request. Defendants point to one case where this factor favored discovery because, even though the plaintiffs had not yet filed a preliminary injunction motion, they had promptly sought a temporary restraining order and intended to file a preliminary injunction motion shortly. *New Mexico v. Musk*, 770 F. Supp. 3d 192, 198 (D.D.C. 2025). And they cite a second case where the plaintiffs waited months to seek discovery and did so only after the defendants filed a motion to dismiss, causing the court to find it "at least plausible that plaintiffs [sought] expedited discovery not to bolster the viability of their preliminary injunction motion but instead to fend off a renewed motion to dismiss." *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 99 (D.D.C. 2014). Here, by contrast, the discovery request is tailored to the issues relevant to Plaintiff's pending motion for preliminary relief, and Defendants have not filed a motion to dismiss.

**B.** Next, the discovery requests are narrowly tailored and closely connected to the issues that will be the subject of the evidentiary hearing on the pending motion. Defendants are wrong that these requests are broad and irrelevant. *Contra* Defs.' Opp., ECF No. 33, at 16–17.

Defendants first argue that communications about the deportation of Iranians is not relevant because this case is about the sharing of confidential information, not about deportations or routine information sharing. *See id.* at 17–18. But knowing what information is shared is necessary to understand whether the sharing of that information violates 8 C.F.R. §§ 208.6 and 236.1(e).

Defendants also argue that requests concerning meetings between Defendants and the Iranian Interests Section about removals are not relevant. *See* Defs.' Opp., ECF No. 33, at 18. But these meetings were the mechanism through which the policy was carried out, *see* Mehri Decl., ECF No. 9-6, at ¶¶ 23–24, 37–42, and the Court specifically stated that it needed this information to resolve the motion for preliminary relief, *see* Hrg. Tr., ECF No. 29, at 45:19–46:3. Whether communications are ongoing and whether deportation flights continue is also relevant to establishing the extent of any irreparable harm and tailored to questions that the Court directed Defendants to answer. *See id.* at 4:16–5:23, 6:4–6.

Likewise, the request for documents on which Defendants' declarant Noah Adams relied to prepare his declaration is pertinent, because those documents are likely to be a core part of the evidentiary hearing. *See id.* at 29:5–33:13, 46:4–7. And requested documents related to policies and protocols about information-sharing and redaction are important to determine whether Defendants have adopted a policy that deviates from their prior guidelines.

The seven interrogatories are also tailored to and relevant to this stage of litigation. Defendants' chief argument is that the names of individuals who shared information with Iran are relevant only to depositions and further discovery, not to the evidentiary hearing. Discovery of

the names is important, however, to understanding the scope of the communications and agreement between Iran and the United States, and to determining whether any additional witnesses should be present at subsequent evidentiary hearings, if any. Ultimately, these requests are reasonable because they are all "tailored to determining the contours of the agencies' actions that are necessary for deciding a preliminary injunction [and stay] motion." *AFL-CIO*, 349 F.R.D. at 251.

**C.** Finally, Defendants argue that the discovery requests come too early and are burdensome. Defendants overlook that the requests seek information that Defendants' witnesses will need to compile in any event, so that their witnesses can review the material in advance of the evidentiary hearing if they are to have the requisite knowledge to describe Defendants' policies. And although Defendants will need to review the documents for privilege, the need for privilege review does not make these discovery requests "any different from the typical burden of an expedited discovery request." *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Pompeo*, No. 18-cv-1388, 2019 WL 9598404, at *2 (D.D.C. Jan. 30, 2019).

## III. Plaintiff's counsel conferred with Defendants' counsel to determine whether Defendants would oppose its motion for expedited discovery.

Before filing the motion to compel discovery, Plaintiff's counsel exchanged with Defendants' counsel five emails discussing the proposed discovery and the legal standard for deciding the motion. *See* Email Exchange, ECF No. 33-1. Defendants argue that this exchange is insufficient to determine whether Defendants oppose the relief sought. Defs.' Opp., ECF No. 33, at 4–7 (citing Local Civ. R. 7(m)). As the email exchange shows, however, Plaintiff asked for Defendants' position and answered the questions that Defendants' counsel posed. And given Defendants' position that *no* discovery is permissible, *id.* at 12–14, Defendants' assertion that they might have consented to the relief sought if they had been provided an advance copy of the

requests, or if the legal standard for expedited discovery had been explained to them in greater detail, is not well supported.

Further, in response to counsel's inquiry as to the purpose of the discovery, Plaintiff's counsel explained that "[t]he discovery will be tailored to the issues the Court wants to hear about at the evidentiary hearing, such as whether the policy exists." Email Exchange, ECF No. 34-1, at 1. Plaintiff's counsel further explained that because the administrative record is not due for several more weeks, "getting some discovery before the hearing will promote efficiency." *Id.* And in response to opposing counsel's inquiry as to the applicable legal standard, Plaintiff's counsel explained that "district courts have broad discretion over discovery and use 'reasonableness' to determine whether to order expedited discovery." *Id.* Such discussion is sufficient to fulfill counsel's duty to confer to determine whether a motion will be opposed.

**CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiff's motion for expedited discovery.

Dated: August 27, 2026

Respectfully submitted,

/s/ Michael T. Kirkpatrick

Ali Rahnama (DC Bar No. 1032695)
Bardia Arasteh (pro hac vice pending)
Iranian American Legal Defense Fund
1901 Pennsylvania Ave NW, Ste. 900
Washington, DC 20006
(202) 339-1255
ali.rahnama@ialdf.org
barasteh@ialdf.org

Michael T. Kirkpatrick (DC Bar No. 486293)
Becca Steinberg (DC Bar No. 1736190)
(admitted pro hac vice)
Public Citizen Litigation Group
1600 20th Street, NW
Washington, DC 20009
(202) 588-7728
mkirkpatrick@citizen.org
bsteinberg@citizen.org

*Attorneys for Plaintiff Iranian American Legal Defense Fund*