# Supplemental Declaration of N.A.

# SUPPLEMENTAL DECLARATION OF [redacted]

*For Submission to U.S. Courts, Immigration Authorities, International Human Rights Tribunals, Commissions, Committees, and Other Relevant Bodies or Courts of Competent Jurisdiction*

I, [redacted] hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge, information, and belief. The facts stated below are based on my own personal knowledge, except where I indicate that a statement is made on information I received from another person; where I do, I identify the source of the information and I believe it to be true.

## My Earlier Declaration

1. On June 20, 2026, at Eloy Detention Facility, I signed a declaration describing my background, my fear of return to Iran, and the disclosure of information to the government of the Islamic Republic of Iran (the "regime"). I understand that my declaration was submitted to the United States District Court for the District of Columbia in Iranian American Legal Defense Fund v. Rubio, No. 26-cv-2375, as Exhibit 2.J. I have reviewed my earlier declaration again. It remains true and correct. I make this supplemental declaration to provide additional detail about the meeting with [redacted], the Director of the regime's Interests Section, that ICE required me to attend — including the moment when an ICE officer, at [redacted] request, looked up on his computer and shared information about a detainee's husband's asylum case on the spot.

## My Asylum Case and the Confidential Information in It

2. As I described in my earlier declaration, I am a Christian convert from Islam, baptized in Iran before starting my bachelor's degree in psychology. After I resisted and reported an attempted rape by a university dean, I was detained, pressured to drop my case, and tortured; my house was raided during the legal battle and a Bible was found in my room, which was added to the charges against me; and since leaving Iran I have been tried in absentia for apostasy and sentenced to prison. In connection with my asylum case, I disclosed detailed information about my identity, my family, my political opinion, my religion, and the reasons I fear the regime, in reliance on the confidentiality protections of U.S. and international laws and norms and my reliance on the U.S. Government's assurances that this information would not be shared with the Iranian regime.

**The Meeting ICE Required Me to Attend with [redacted]**

[redacted] 3. In or about November 2025, I was called by ICE to go to North Visit. I was forced, along with other Iranian detainees, to meet with the Director of the Iranian Interests Section, [redacted] He was there to convince us to go back to Iran. I remember the following other detainees present: [redacted] the ICE officer present was a tall white man.

[redacted] 4. [redacted] had a list of all of our names. He even called on two of the detainees who had not shown up. He was holding a list of our names, and when asked by [redacted] about her husband's status, who was an asylum seeker kept in Georgia, ~~[illegible]~~ [redacted] asked her name and checked the list and then asked her husband's name and saw that his name is not on the list. [redacted] asked the ICE officer to check the husband's status, who is an asylum ~~seeker~~, and the officer checked ~~[illegible]~~ on his computer and replied to him with details of his case on the spot.

5. There was an ICE officer with [redacted] During the meeting, one of the female Iranian asylum seeker detainees asked about her husband, who was detained in a different facility. [redacted] asked the ICE officer to get information about him and where he is in his case as an asylum seeker. The ICE officer shared that information with [redacted] on the spot looking through his computer. [redacted]

6. I have never given the Interests Section of the Islamic Republic of Iran, or any other arm of the regime, permission to receive information about me, my immigration case, or my asylum claim. No one from the United States government ever asked for my consent to share information about me or my case with the regime or its representatives, and I never consented.

7. Watching a United States officer hand a regime official information about an Iranian asylum seeker, in front of us, made me understand that the regime can learn anything about us — including that we sought protection from it and what we said to get it. Now that information about my asylum claim and detention records has been disclosed by ICE to the murderous regime in Iran, I face a new and independent risk of torture or persecution: I have been identified to the very government whose courts have already convicted me of apostasy. This disclosure has materially increased the likelihood that I will be detained, interrogated, tortured,

or killed if I am ever returned to Iran, and it has exposed my acquaintances and family who remain in Iran to reprisal.

I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on the first day of september, 2026,

at Detention Facility of eloy detention center City of Eloy, State of AZ

[redacted]

[redacted]