UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IRANIAN AMERICAN LEGAL DEFENSE FUND,

Plaintiff,

v.

MARCO RUBIO, in his official capacity as Secretary of State, *et al.*,

Defendants.

Civil Action No. 26-2375-ACR

**FILED UNDER SEAL**
**REDACTED VERSION FILED ON PUBLIC DOCKET**

**SECOND DECLARATION OF CYRUS MEHRI**
**(FILED UNDER SEAL)**

I, Cyrus Mehri, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct. If called as a witness, I could and would testify as follows.

**Background and Purpose**

1. I am an attorney and a member in good standing of the bars of Washington, D.C., and Connecticut, a founding partner of Mehri & Skalet, PLLC, and a member of the Board of Directors of the Iranian American Legal Defense Fund ("IALDF"), the Plaintiff in this action. I previously submitted a declaration in this action, *see* Declaration of Cyrus Mehri, ECF No. 9-6, filed July 15, 2026 (the "First Mehri Decl."), which described, among other things, my direct communications with the Senior Official of the Islamic Republic of Iran's Interests Section in Washington, D.C., whom that declaration referred to only as the "Senior Official." I incorporate that declaration by reference. I have direct, personal knowledge of the facts set forth below.

2. I submit this second declaration under seal, concurrently with Plaintiff's Motion for Leave to File Under Seal. I am also submitting a redacted publicly filed version of the declaration. In this declaration, I identify by name, title, and role the "Senior Official" referenced throughout my prior declaration — the Senior Official of the Islamic Republic of Iran whose visits to, and contacts with, detained Iranian asylum seekers in U.S. Immigration and Customs Enforcement ("ICE") custody are described in my prior declaration, in the

Declaration of Ali Rahnama ("Rahnama Decl. A"), in the Second Declaration of Ali Rahnama ("Rahnama Decl. B"), and in Exhibits 2.A through 2.L thereto. I also report on more recent communications with the Senior Official and provide additional context.

**Identity of the Senior Official**

3. The "Senior Official" referenced in my prior declaration is [redacted]. Mr. [redacted] of the Interests Section of the Islamic Republic of Iran in Washington, D.C. (the "Iranian Interests Section"), and in that capacity is [redacted].

4. Because the United States and the Islamic Republic of Iran have not maintained diplomatic relations since 1980, the Iranian Interests Section operates under the auspices of the Embassy of Pakistan in Washington, D.C. It is my understanding that [redacted]. Because the Interests Section is the Islamic Republic's only official presence in the United States, [redacted].[1]

5. [redacted] to the Iranian American community. As a [redacted] the diaspora's positive contributions to American society. He has an [redacted]

[1] *See* [redacted]

[redacted] in the Iranian American community.

**July 13 Telephone Call with Mr. [redacted]**

6. On July 13, 2026, I received an unexpected and unsolicited telephone call from Mr. [redacted]. The call occurred less than a week after IALDF filed this case on July 7, 2026, after press outlets had reported on the filing, and after the Interim Executive Director of IALDF, Ali Rahnama ("Mr. Rahnama"), had appeared on MS NOW to discuss the case.

7. I told Mr. [redacted] that I was about to join a weekly call with my law firm colleagues and I would call him afterwards.

8. I called him back around 10:45 a.m. and we spoke for about 20 minutes. I asked him if one of my law partners could join the call. He said "no, I want to talk to you alone." I agreed. He said: "Cyrus, I am seeing all of these press reports which mention my monthly meetings with ICE." He suggested that I could only have gotten such information from him, and said that he thought our earlier conversation "would be confidential" and was "only for clarification purposes." I reminded him that I had specifically told him when we met in person in March that our conversations were not confidential, which he acknowledged.

9. He then told me that he was upset about Mr. Rahnama's interview on MS NOW where Mr. Rahnama highlighted the Islamic Regime's woeful human rights record. I defended Mr. Rahnama and said that "everything Ali said was true." Then, referencing our previous meeting at my office, Mr. [redacted] stated that if he knew "that Ali was going to be there, [he] wouldn't have come."

10. I explained that "our lawsuit is against the Trump Administration for violating U.S. laws." I indicated that he could be called as a witness in the U.S. court system and asked "if so, what would you do?" Relying on his diplomatic status, he said, "I would stay out of it." He made it clear to me that he would not voluntarily participate in a U.S. legal process, and he would stand on his diplomatic status.

**September 25 Telephone Call with Mr. [redacted]**

11. At the August 5 hearing in this case, the Court suggested that it would like to hear directly from the Senior Official, if possible, and indicated that he could testify under seal to protect his identity. *See* Hr'g Tr., ECF No. 29, at 46:24–47:22. The Court has scheduled the evidentiary hearing for October 15, 2026.

12. On September 25, 2026, at approximately 1:20 p.m., I called Mr. [redacted] to try to arrange for his appearance at the evidentiary hearing. He immediately picked up. I asked him if it was a good time to talk. He explained he was [redacted], but I happened to reach him during a down time.

13. He asked if I was alone. I said, "yes, I am alone at my office." He sounded hurt and upset. He indicated he felt betrayed that what he told me ended up in the Court proceedings. He then explained how upset he was with Mr. Rahnama, alluding to Mr. Rahnama's comments in his interview on MS NOW described above. He stated he was concerned that Mr. Rahnama may have recorded our meeting at my office in March.

14. I told him I was calling to "recap and update" him. I reminded him that when he called me on July 13, I had told him to anticipate that he could be asked to testify in this case. I told him that we filed court papers recounting my prior conversation with him, but "because you were being so forthright with me, I felt strongly that out of fairness, that I did not identify you by name and that instead the papers refer to you as 'a Senior Official'."

15. I further explained that we had a hearing on August 5 and we have an upcoming one on October 15. I told him that the Court "would like to hear from you directly. And the judge will agree to a process that will protect your identity by keeping your name under seal." I added that "I am not giving you legal advice or suggesting what you should do but that I am duty bound to convey the Court's wishes." I indicated that I hoped he would "consider testifying." He responded in clear and emphatic terms and in a respectful tone: "Due to my position, that is something that I cannot do." I read back the quote twice and asked him if he wanted me to share that exact quote with the Court, and he said yes. I asked him to tell me if he changed his mind about testifying.

16. Then he said he wanted me to know "when I go into ICE facilities, I go there to help people who want to meet with me." I responded: "You can say that all you want, but that's not what we are hearing from detainees." I explained that "Iranian detainees are saying that they are forced to meet you against their will, that people are put on mass deportation flights against their will, and their confidential information that should not be shared with you is being shared with you." I added that "we are following the evidence." He was quiet and had no response.

17. He then continued along the lines that he is here to help the Iranian American community. I told him that I understood that he [redacted]. But, I added, "we are never going to agree on this issue," referring to the fate of the Iranian asylum seekers.

18. He seemed to appreciate that I acknowledged that he has been [redacted]. I concluded by reading the quote for a third time that he wanted to be shared with the Court: "Due to my position, that is something that I cannot do." He again confirmed that I could share that exact quote with the Court. I ended the call by again asking him to consider the Court's request and let me know if he changes his mind.

19. I have not heard from him since. If he contacts me or indicates his willingness to testify, I will promptly inform counsel so that the Court can be advised.

**Conclusion**

20. I respectfully submit this declaration under seal.

21. I am available to testify at the October 15, 2026, evidentiary hearing, and to be cross-examined, regarding the matters set forth in this declaration and in the First Mehri Decl.

22. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 7, 2026, in Washington, D.C.

______________________________

Cyrus Mehri

Mehri & Skalet, PLLC

Member, Board of Directors, Iranian American Legal Defense Fund