**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IRANIAN AMERICAN LEGAL DEFENSE FUND,

*Plaintiff*,

v.

MARCO RUBIO, in his official capacity as Secretary of State, et al.,

*Defendants*.

Civil Action No. 26-2375-ACR

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISSOLVE**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

BACKGROUND ..... 1

ARGUMENT ..... 4

I. The Court has authority to order notice, and the preliminary injunction factors do not apply. ..... 4

II. The Court has jurisdiction over this case. ..... 7

A. IALDF has standing. ..... 7

B. The INA does not bar review. ..... 9

C. The Court's order is within its jurisdiction. ..... 12

CONCLUSION ..... 12

## TABLE OF AUTHORITIES

**Cases** **Pages**

*Belbacha v. Bush*,
520 F.3d 452 (D.C. Cir. 2008) ... 12

*Biden v. Texas*,
597 U.S. 785 (2022) ... 11

*Coalition for Independent Technology Research v. Rubio*,
836 F. Supp. 3d 215 (D.D.C. 2026) ... 9, 11

*Cobell v. Kempthorne*,
455 F.3d 317 (D.C. Cir. 2006) ... 6

*DHS v. Regents of the University of California*,
591 U.S. 1 (2020) ... 10

*FDA v. Alliance for Hippocratic Medicine*,
602 U.S. 367 (2024) ... 9

*GTE Sylvania, Inc. v. Consumers Union of the United States*,
445 U.S. 375 (1980) ... 12

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*,
485 U.S. 271 (1988) ... 5

*Hispanic Affairs Project v. Acosta*,
901 F.3d 378 (D.C. Cir. 2018) ... 8

*I.A.M. National Pension Fund Benefit Plan A v. Cooper Industries, Inc.*,
789 F.2d 21 (D.C. Cir. 1986) ... 6

*Information Handling Services, Inc. v. Defense Automated Printing Services*,
338 F.3d 1024 (D.C. Cir. 2003) ... 7

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) ... 10

*Make the Road New York v. Mullin*,
179 F.4th 16 (D.C. Cir. 2026) ... 5

*Mercer v. Magnant*,
40 F.3d 893 (7th Cir. 1994) ... 5

*N.S. v. Dixon*,
141 F.4th 279 (D.C. Cir. 2025) ........ 10, 11

*N.S. v. Dixon*,
2021 WL 4622490 (D.D.C. Oct. 7, 2021) ........ 10

*Nken v. Holder*,
556 U.S. 418 (2009) ........ 5

*O.A. v. Trump*,
404 F. Supp. 3d 109 (D.D.C. 2019) ........ 8, 10

*Refugee & Immigrant Center for Education & Legal Services v. Mullin*,
174 F.4th 81 (D.C. Cir. 2026) ........ 5, 11

*Reno v. American-Arab Anti-Discrimination Committee*,
525 U.S. 471 (1999) ........ 9

*Southern Ute Indian Tribe v. Leavitt*,
564 F.3d 1198 (10th Cir. 2009) ........ 5

*Steel Co. v. Citizens for a Better Environment*,
523 U.S. 83 (1998) ........ 7

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) ........ 11

*United States v. Insurance Co. of North America*,
131 F.3d 1037 (D.C. Cir. 1997) ........ 7

*United States v. United Mine Workers of America*,
330 U.S. 258 (1947) ........ 12

*Venetian Casino Resort, L.L.C. v. EEOC*,
530 F.3d 925 (D.C. Cir. 2008) ........ 8

*Warth v. Seldin*,
422 U.S. 490 (1975) ........ 7

**Statutes**

8 U.S.C. § 1252(a)(5) ........ 10

8 U.S.C. § 1252(b)(9) ........ 10

8 U.S.C. § 1252(f)(1) ........ 10, 11

8 U.S.C. § 1252(g) .......................................................................................................... 9, 10

**Regulations**

8 C.F.R. § 208.6 .......................................................................................................... 1, 2

8 C.F.R. § 236.1(e) .......................................................................................................... 1, 2

## INTRODUCTION

On October 15, 2026, this Court ordered Defendants to provide notice to the Court before removing any Iranians to Iran. *See* Order, ECF No. 45. Defendants have moved to dissolve that order. *See* Defs. Mot., ECF No. 51. Defendants' motion rests on a mistaken representation about what the order says, repeatedly suggesting that it halts or interferes with removals. *See id.* at 8, 9, 10, 11, 13, 14. While the order requires that Defendants provide the Court with notice before any removals, it does not limit Defendants' authority to carry out removals. Defendants also mistakenly assert that the Court has made jurisdictional determinations that have not yet been made. *See id.* at 4. This case remains pending and this Court retains authority to manage it. The Court's October 15 order is a permissible exercise of this Court's discretionary authority. The Court should deny Defendants' motion to dissolve.

## BACKGROUND

Plaintiff Iranian American Legal Defense Fund (IALDF) brought this action to stop Defendants from providing the Iranian government with information about Iranian asylum seekers that is protected by 8 C.F.R. §§ 208.6 and 236.1(e). *See* Compl., ECF No. 1. IALDF alleges that, beginning in March 2025, Defendants have routinely provided such information to the Iranian Interest Section and that Defendants' practice constitutes an unwritten policy subject to vacatur under the Administrative Procedure Act (APA). *Id.* Shortly after filing its complaint, IALDF moved for a stay under Section 705 of the APA and for a preliminary injunction to return the parties to the status quo ante while this case proceeds. *See* ECF No. 9.

On August 5, 2026, the Court held a hearing on IALDF's motion. During the hearing, Defendants denied that the challenged policy exists but conceded that any such policy would be unlawful. *See* Aug. 5 Hr'g Tr., ECF No. 29, at 11:4–8, 27:13–23. Seeking further information regarding the existence of the policy, the Court held an evidentiary hearing on October 15, 2026.

IALDF submitted evidence in the form of seven declarations from Iranians in ICE detention who swore that officials from the Iranian Interest Section possessed information about their asylum applications and those of other Iranians. *See* Pl. Pre-Hearing Submissions, ECF Nos. 40, 40-2 to 40-7; Pl. Supp. Pre-Hearing Submission, ECF No. 43-2. The declarations came from detainees at four different detention centers and described in-person meetings and phone calls with Iranian government officials. IALDF also relied on a declaration from one of its board members that described a meeting with a senior official of the Iranian Interest Section who confirmed that ICE had provided the Iranian government with confidential information about the asylum applications of Iranians in ICE detention. *See* Mehri Decl., ECF No. 9-6.

Defendants do not dispute that information protected by 8 C.F.R. §§ 208.6 and 236.1(e) has been shared with the Iranian Interest Section. Indeed, Defendants' primary witness, Noah Adams, testified that he reviewed one randomly selected travel document request sent to the Iranian Interest Section: This document had not been properly redacted, so it included legally protected asylum information. *See* Oct. 15 Hr'g Tr., ECF No. 53, at 27:6–14, 37:3–8, 38:22–39:11. Mr. Adams confirmed that the unredacted packet "had already gone out" to the Interest Section, *id.* at 50:1–5, and that it was the only packet he had reviewed—selected at random because it was what "was available," *id.* at 37:7–8, 38:25–39:3. Nevertheless, the official testified that he was not aware of any government policy to share protected information with the Iranian Interest Section. *See id.* at 52:2–7.

The Court denied IALDF's motion for a stay and preliminary injunction, finding that IALDF had not produced evidence of the existence of a policy sufficient to overcome Defendants' denial and therefore had not shown a likelihood of success on the merits. *See id.* at 64:7–9, 67:16–68:2; Minute Order of Oct. 20, 2026. The Court concluded that "there may well have been a

breach. But that doesn't mean that there was a policy." Oct. 15 Hr'g Tr., ECF No. 53, at 64:20–22. The Court hypothesized that confidential information could have been shared because of redaction errors, *id.* at 63:20–23, or "just gross bureaucratic incompetence," *id.* at 65:21–22. The Court has entered a briefing schedule for Defendants' anticipated motion to dismiss the complaint. *See* Minute Order of Nov. 8, 2026.

The Court also left issues related to discovery unresolved. It denied IALDF's motion for discovery without prejudice and told IALDF: "I'm going to give you a chance to brief if you want discovery." Oct. 15 Hr'g Tr., ECF No. 53, at 67:8–11. The Court also ordered notes of a meeting produced for *in camera* review and directed that "[a]ny forthcoming motion to dismiss shall state whether the Court may consider the evidence from last week's hearing in resolving the motion." Minute Order of Oct. 20, 2026.

On October 15, 2026—the same day this Court denied IALDF's motion for a § 705 stay or preliminary injunction—the Court ordered Defendants "to notify the Court within 24 hours of the finalization of a plan to remove Iranians present in the United States to Iran" and "to provide the Court five business days' written advance notice prior to removing any Iranian individual present in the United States to Iran." Order, ECF No. 45, at 1–2. The Court advised that the order "should be read broadly to include any removal of Iranians that could result in those individuals being sent to Iran," *id.* at 1, including removals to a third country from which the individual might later be sent to Iran. The order was filed *ex parte* and under seal. On November 4, 2026, Defendants filed under seal a motion to dissolve the order. *See* Defs. Mot., ECF No. 51. The following day, the Court directed the Clerk to unseal the order and the motion and further ordered IALDF to file a response to Defendants' motion. *See* Minute Order of Nov. 5, 2026; Minute Order of Nov. 8, 2026.

On November 8, 2026, IALDF filed a notice informing the Court that eleven Iranian nationals were reportedly scheduled for removal to Iran that same morning in apparent violation of the Court's order requiring five business-days notice before any such removals. *See* Pl. Notice, ECF No. 55. The Iranians were deplaned before the flight departed. Defendants filed responses under seal, which IALDF has not seen. *See* ECF Nos. 57, 58.

## ARGUMENT

Defendants' motion to dissolve the order should be denied because it is based on fundamental mistakes regarding the extent of the Court's order and the status of this case. First, the order is not a preliminary injunction and does not enjoin removals to Iran. It merely requires notice before such removals take place. Second, the Court has not made a final determination that there is no policy subject to challenge under the APA. Rather, the Court denied IALDF's motion for preliminary relief because the Court found that IALDF did not have a likelihood—based on the currently available evidence—of proving the existence of the policy. Because the case remains live, the Court may order notice of relevant factual developments.

### I. The Court has authority to order notice, and the preliminary injunction factors do not apply.

Defendants argue that the Court's order should be dissolved because the Court entered it without finding that the four factors required for a preliminary injunction had been met. *See* Defs. Mot., ECF No. 51, at 3–4. But the order is not a preliminary injunction. Prior to October 15, 2026, Defendants had taken the position that "there are no planned removals to Iran in the foreseeable future." Adams Decl., ECF No. 23-2, ¶ 17. At the hearing on October 15, 2026, Defendants announced that there had been a change and planning was underway to resume removals to Iran. *See* Oct. 15 Hr'g Tr., ECF No. 53, at 8:22–9:19. In that context, the Court ordered notice within 24 hours of a final plan and at least five business days before any removal to Iran. The Court did

not issue a preliminary injunction—it relied on its inherent authority to be kept apprised of factual developments relevant to the case.

Contrary to Defendants' assertion, not every command by a court during the pendency of a case constitutes a preliminary injunction. In Defendants' view, a court has issued an injunction anytime (1) it commands a party to do or not do something and (2) its order is backed by the power of contempt. *See* Defs. Mot., ECF No. 51, at 2. Defendants point to a series of cases that characterize injunctions, but the court in each instance was distinguishing between an injunction (which operates directly on a party) and either vacatur or a stay (which operate on the challenged agency action). *See Make the Rd. New York v. Mullin*, 179 F.4th 16, 31 (D.C. Cir. 2026) (distinguishing between stay and injunction); *Nken v. Holder*, 556 U.S. 418, 428 (2009) (distinguishing between stay and injunction); *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin*, 174 F.4th 81, 119 (D.C. Cir. 2026) (distinguishing between vacatur and injunction). None of these cases purport to lay out a test for distinguishing between an injunction and ordinary docket management.

As the Supreme Court has explained, "[a]n order by a federal court that relates only to the conduct or progress of litigation before that court ordinarily is not considered an injunction." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 279 (1988). Put differently, an order is not an injunction simply because it "may be characterized as an order to do something"; it is an injunction only if it "*award[s] relief on the merits, or effectively foreclos[es] some element of relief*." *S. Ute Indian Tribe v. Leavitt*, 564 F.3d 1198, 1207 (10th Cir. 2009) (quoting *Mercer v. Magnant*, 40 F.3d 893, 896 (7th Cir. 1994)). "To qualify as an injunction, … an order must (1) be 'directed to a party'; (2) be 'enforceable by contempt'; (3) be 'designed to accord or protect' substantive relief; and (4) threaten 'a serious, perhaps irreparable, consequence' and be

challengeable 'only by immediate appeal.'" *Cobell v. Kempthorne*, 455 F.3d 317, 322 (D.C. Cir. 2006) (quoting *I.A.M. Nat'l Pension Fund Benefit Plan A v. Cooper Indus., Inc.*, 789 F.2d 21, 24 (D.C. Cir. 1986)).

Under the four-part test set forth by the D.C. Circuit, the Court's order requiring notice is not an injunction. The order does not accord or protect *substantive* relief; it requires only that Defendants notify the Court of relevant factual developments. And the order does not threaten a serious, irreparable consequence. That question, which is distinct from whether an order is enforceable by contempt, looks at the impact of the action that the order requires. *See Cobell*, 455 F.3d at 322–23. Here, the requirement that Defendants provide notice to the Court cannot reasonably be characterized as imposing "a serious, perhaps irreparable consequence." *Cf. id.* (stating that an order requiring an "agency to confess its own unreliability … in every mailing on any subject" is "both serious and, if unjustified, not correctable at the end of the litigation"). Removals are not arranged in a compressed time period: ICE must first submit a travel document request to the Iranian Interest Section, wait for the Interest Section to issue the document, and then coordinate flight arrangements. *See* Oct. 15 Hr'g Tr., ECF No. 53, at 26:2–17, 40:15–22. A five-day notice requirement does not interfere with this timeline at all, let alone in a way that poses "a serious, perhaps irreparable consequence." *Cobell*, 455 F.3d at 322.

Finally, Defendants err by asserting that the Court's order requiring notice accords "some or all of the substantive relief sought by [the complaint]." Defs. Mot., ECF No. 51, at 2 (quoting *I.A.M. Nat'l Pension Fund*, 789 F.2d at 23–24). IALDF's complaint does not seek notice of removal flights to Iran; it seeks vacatur of Defendants' policy of providing confidential asylum information to the Iranian government. *See* Compl., ECF No. 1, at 12. To be sure, the complaint requests that the Court appoint a special master to review the files that were shared with the Iranian

Interest Section and pause the deportation of Iranian detainees until that review is complete. *Id.* at 12–13, ¶¶ d, f. The required notice, though, cannot reasonably be read to provide that relief. Defendants themselves concede the point elsewhere in their motion: Their final argument insists that the notice requirement is not "tethered to the facts or legal theory of the complaint" at all. Defs. Mot., ECF No. 51, at 15. Both positions cannot be true. If the order is untethered to the relief the complaint seeks, it fails *Cobell*'s third element and is not an injunction; if instead it "protect[s]" that relief, Defendants' final argument collapses. Either way, the motion fails.

## II. The Court has jurisdiction over this case.

Defendants argue that the Court should dissolve its order requiring notice because it lacks jurisdiction. Defendants' arguments lack merit.

### A. IALDF has standing.

To start, Defendants argue that IALDF lacks standing because, at the preliminary-injunction stage, the Court concluded that IALDF could not show a likelihood that the challenged policy exists. *See* Defs. Mot., ECF No. 51, at 4. But the existence of the policy goes to the merits, not to jurisdiction. "[S]tanding in no way depends on the merits" of IALDF's claims. *Warth v. Seldin*, 422 U.S. 490, 500 (1975). And at this early stage of litigation, the Court "must presume that the general allegations in the complaint encompass the specific facts necessary to support those allegations." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998); *see Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1029–30 (D.C. Cir. 2003).

Defendants do not offer any substantive argument that the existence of the policy is a jurisdictional issue. Instead, they assert, incorrectly, that the Court has already made this determination, so it is now law of the case. *See* Defs. Mot., ECF No. 51, at 4. "[T]he scope of the 'law of the case' doctrine is limited to issues that were decided either explicitly or by necessary implication." *United States v. Ins. Co. of N. Am.*, 131 F.3d 1037, 1041 (D.C. Cir. 1997). This

Court has not made any decision about whether the existence of the policy relates to jurisdiction, and Defendants point only to a *question* that this Court posed, during a hearing in which this Court did not make any decision. *See* Defs. Mot., ECF No. 51, at 4 (citing Aug. 5 Hr'g Tr., ECF No. 29, at 9:6–7). Further, this Court's preliminary-injunction decision did not "by necessary implication" hold that the existence of the policy was a standing issue. And for their part, Defendants, in opposing the motion, themselves characterized the issue as one related to the merits, not to jurisdiction. *See* Defs. Opp. to Mot. for Prelim. Inj., ECF No. 23, at 28–34.

Regardless, IALDF's claim does not rise or fall on proof of a written directive or formal agreement. An agency's unwritten policy is itself reviewable agency action, *Venetian Casino Resort, L.L.C. v. EEOC*, 530 F.3d 925, 929–31 (D.C. Cir. 2008), and "[a]n agency's unannounced departure in practice from a written regulation is a distinct form of agency action that is challengeable, separate and apart from adoption of the regulation itself." *Hispanic Affairs Project v. Acosta*, 901 F.3d 378, 387 (D.C. Cir. 2018). Defendants' witnesses testified that they do not track or audit the documents transmitted to the Iranian Interest Section, even though protected information has gone out. *See* Oct. 15 Hr'g Tr., ECF No. 53, at 26:2–11, 33:25–34:2, 35:9–11, 36:25–37:2, 49:13–15, 50:1–5. Whether that practice states an APA claim is a merits question for subsequent briefing—not a reason to dissolve a notice order now.

Defendants next argue that IALDF lacks standing because the challenged policy causes it no injury. *See* Defs. Mot., ECF No. 51, at 4. As IALDF has explained, however, the challenged policy impairs its work of providing confidential legal services to asylum seekers. *See* Pl. Reply, ECF No. 24, at 7–13. In this regard, *O.A. v. Trump*, 404 F. Supp. 3d 109 (D.D.C. 2019), is on all fours with this case. There, the challenged rule "frustrate[d] [the organizational plaintiffs'] missions of providing direct legal services to asylum seekers," and the plaintiffs provided

declarations showing how the rule would impose increased costs and increase the time required for them to provide legal services. *Id.* at 142–43. The same is true here: IALDF has alleged facts supporting its claims that the challenged policy requires substantial extra time and resources for IALDF to provide its legal services. *See* Compl., ECF No. 1, ¶¶ 54–58.

Defendants' reliance on *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), *see* Defs. Mot., ECF No. 51, at 4, is misplaced. That case reaffirmed that an organization has standing where the challenged conduct "directly affected and interfered with [the organization's] core business activities." 602 U.S. at 395. IALDF's core activity is providing confidential legal services to detained Iranian asylum seekers. The challenged conduct strikes at the confidentiality on which that service depends, forcing changes to IALDF's intake, counseling, screening, and referral practices. Compl., ECF No. 1, ¶¶ 51–58.

Finally, Defendants argue that IALDF's injury is not redressable. *See* Defs. Mot., ECF No. 51, at 5. This argument rehashes Defendants' arguments related to the existence of the policy, which, as explained above, go to the merits of the case and not to standing. And regardless of whether it would be premature to vacate the policy without a more fully developed record, that question says nothing about the propriety of the Court's notice order at this juncture.

**B. The INA does not bar review.**

Defendants argue that four provisions of the INA bar review. *See* Defs. Mot., ECF No. 51, at 5–10. None is relevant.

First, 8 U.S.C. § 1252(g) does not apply for two reasons: IALDF "is not a noncitizen in or facing removal proceedings," and IALDF "challenges a policy rather than any decision to commence, adjudicate, or execute removal." *Coal. for Indep. Tech. Rsch. v. Rubio* (*CITR*), 836 F. Supp. 3d 215, 240–41 (D.D.C. 2026); *see Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). Every case Defendants cite involved an individual noncitizen suing to halt

his own removal. But § 1252(g) is narrow: It does not impose a general jurisdictional limitation, and it reaches only the three discrete actions it names. *See DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020).

Next, neither § 1252(a)(5) nor (b)(9), which concern judicial review of removal orders, applies because IALDF does not seek review of a removal order. *See O.A.*, 404 F. Supp. 3d at 129. These provisions are "certainly not a bar where, as here, the parties are not challenging any removal proceedings." *Regents*, 591 U.S. at 19. To be sure, many of the individuals whose information has been shared have been through removal proceedings. These statutory provisions, however, do not turn on "whether an issue *could* be raised in removal proceedings, but rather whether it 'arise[s] from' those proceedings." *O.A.*, 404 F. Supp. 3d at 133 (quoting 8 U.S.C. § 1252(b)(9)). A broader reading would produce the "staggering results" the Supreme Court has rejected. *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (plurality opinion).

Third, Defendants rely on § 1252(f)(1), which specifies that courts lack jurisdiction to restrain operation of various INA provisions, to argue that the Court cannot enjoin removals. Again, though, Defendants mischaracterize the Court's order. The order does *not* enjoin removals. *See* Order, ECF No. 45. It requires only that Defendants provide the Court with *notice* of upcoming removals. *See id.* Accordingly, the case on which Defendants rely, *N.S. v. Dixon*, 141 F.4th 279 (D.C. Cir. 2025), *see* Defs. Mot., ECF No. 51, at 8–9, is inapplicable. That case stands for the proposition that a court cannot directly restrain the provisions of law that § 1252(f)(1) covers. *See N.S.*, 141 F.4th at 289. Section 1252(f)(1) applies to both § 1226—civil immigration arrests and detentions—and § 1231—detention and removal. The district court in *N.S.* had enjoined the defendants "from arresting and detaining criminal defendants in the Superior Court for the District of Columbia for suspected civil immigration violations." *N.S. v. Dixon*, 2021 WL 4622490, at *8

(D.D.C. Oct. 7, 2021); *see N.S.*, 141 F.4th at 289. The D.C. Circuit held that § 1252(f)(1) barred the district court's injunction precisely *because* the injunction "restrains the Government from carrying out an arrest and detention." *N.S.*, 141 F.4th at 289.

Here, the Court's order imposes no comparable restraint. Rather, the Court's order is more akin to orders that *are* allowable under § 1252(f)(1). For instance, the D.C. Circuit recently affirmed an injunction prohibiting "removing any individual plaintiffs or class members without complying with the asylum statute." *Refugee & Immigrant Ctr.*, 174 F.4th at 117. As the D.C. Circuit explained, because the district court order on appeal had not enjoined removals, § 1252(f)(1) was not triggered, even if the district court's order could impact removals. *Id.* at 117–19. Here, this Court's order has even less of an impact on removal flights. After the Court entered its order, Defendants finalized a removal plan and provided notice under the order, *see* Defs. Notice, ECF No. 47, and this Court has enjoined nothing. An order under which removals may proceed exactly as planned does not enjoin or restrain the operation of any removal provision.

Defendants also point to one aspect of relief sought in the complaint: an injunction to stop Defendants from deporting Iranian detainees whose confidential information may have been shared. *See* Defs. Mot., ECF No. 51, at 9. But § 1252(f)(1) "does not speak to the Court's *jurisdiction*"; it instead "limits the *relief* a court may grant." *CITR*, 836 F. Supp. 3d at 243. Thus, whether any specific relief requested is or is not available does not speak to whether the Court has jurisdiction over this case. *See Biden v. Texas*, 597 U.S. 785, 798 (2022).

Finally, Defendants argue that relief enjoining all removals to Iran would be inconsistent with *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). *See* Defs. Mot., ECF No. 51, at 8. That argument is inapposite here. The order that Defendants' motion seeks to dissolve does not block removals; it imposes a notice requirement.

### C. The Court's order is within its jurisdiction.

Defendants' jurisdictional arguments share a premise: that the Court must dissolve its order now, before jurisdiction is briefed and decided. But a district court faced with a substantial question of its own jurisdiction may preserve existing conditions while it determines that question, and its orders bind the parties in the meantime. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 290–93 (1947); *see GTE Sylvania, Inc. v. Consumers Union of U.S.*, 445 U.S. 375, 386 (1980). The D.C. Circuit has applied that principle where, as here, the government invoked a jurisdiction-stripping statute. *See Belbacha v. Bush*, 520 F.3d 452, 455–56 (D.C. Cir. 2008).

The October 15 order allows the Court to remain informed of relevant developments while jurisdictional determinations are pending. Defendants acknowledge that this Court "had jurisdiction to determine its jurisdiction." Defs. Mot., ECF No. 51, at 3. The Court has entered a schedule under which Defendants' jurisdictional arguments will be briefed in full by January 8, 2027. *See* ECF No. 49; Minute Order of Nov. 8, 2026. The Court tied the notice requirement to this interim period. *See* Oct. 15 Hr'g Tr., ECF No. 53, at 16:8–11.

Defendants also contend that this Court's order exceeds its jurisdiction because it is not relevant to the information-sharing policy alleged in the Complaint. *See* Defs. Mot., ECF No. 51, at 15. This argument is premised on the mistaken assumption that the Court's order is, in fact, an injunction. As previously explained, it is not. *See supra* at 4–7.

## CONCLUSION

Defendants' motion to dissolve the order should be denied. Alternatively, the Court should defer any ruling on the motion until it resolves Defendants' forthcoming motion to dismiss, which will present the same jurisdictional arguments on full briefing.

Dated: November 16, 2026

Respectfully submitted,

/s/ Becca Steinberg
Becca Steinberg (DC Bar No. 1736190)
Michael T. Kirkpatrick (DC Bar No. 486293)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
bsteinberg@citizen.org
mkirkpatrick@citizen.org

Ali Rahnama (DC Bar No. 1032695)
Bardia Arasteh (admitted pro hac vice)
Iranian American Legal Defense Fund
1901 Pennsylvania Ave NW, Ste. 900
Washington, DC 20006
(202) 339-1255
ali.rahnama@ialdf.org
barasteh@ialdf.org

*Attorneys for Plaintiff Iranian American Legal Defense Fund*